Nancy JOHNSON, Relator (50010),

Sharyl Stenson, Relator (50011),

v.

**INDEPENDENT SCHOOL DISTRICT NO. 535, ROCHESTER, Minnesota, Respondent,**

**Minnesota Department of Economic Security, Respondent.**

Nos. 50010, 50011.

Supreme Court of Minnesota.

April 18, 1980.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Mark S. Olson, Gary Green, Legal Counsel Minnesota Education Association, St. Paul, for relators.

Schacht & Kerr and George R. Kerr, Rochester, for Independent School Dist. No. 535.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Peter C. Andrews, Asst. Atty. Gen., and William G. Brown, Sp. Asst. Atty. Gen., St. Paul, for respondents.

OTIS, Justice.

This matter is before us on a writ of certiorari issued under Minn.Stat. § 268.10, subd. 8 (1978). The Department of Economic Security, relying on Minn.Stat. § 268.08, subd. 6(a) (1978), declared claimants/relators Nancy Johnson and Sharyl Stenson ineligible to receive unemployment benefits during the summer of 1978. We reverse and remand for an eligibility determination consistent with this opinion.

Claimant Johnson was employed by Independent School District No. 535 as a full-time teacher under a continuing contract during the 1976–1977 school year. Effective the end of that year, she was placed on unrequested leave of absence pursuant to Minn.Stat. § 125.12 (1978). At the same time she was listed on the school district's active substitute list. By June 1977 she signed a formal long-term substitute contract, under which she taught full-time during the 1977–1978 school year.

Claimant Stenson taught full-time for the district under a continuing contract from 1975 to 1977. She was also placed on unrequested leave of absence and listed on the active substitute list at the conclusion of the 1976–1977 school year. In December 1977 she accepted a long-term substitute contract under which she taught full-time from January to June 1978. While teaching under long-term substitute contracts, claimants continued to be listed on the active substitute list.

Following the 1977–1978 school year claimants remained on unrequested leaves of absence. They were not offered contracts for the following year, but instead received memoranda to the effect that they would be retained on the district's active

substitute list and contacted if any long-term assignments developed for which they qualified. The *memoranda were not offers of employment.*

When they were not offered contracts for the 1978–1979 school year, claimants applied for unemployment compensation. Benefits were denied for the summer period between academic terms on the ground that claimants were ineligible under Minn.Stat. § 268.08, subd. 6(a) (1978),[1] which provides that benefits for public school teachers and certain other categories of employees are payable on the same basis as benefits for other employees except that:

> With respect to weeks of unemployment after December 31, 1977, benefits based upon service performed in an instructional, research, or principal administrative capacity for * * * a public school * * * shall not be paid for any week of unemployment commencing during the period between two successive academic years or terms * * * to any individual if the individual performs the services in the first of the academic years or terms and if there is a contract or a reasonable assurance that the individual will perform services in any such capacity for any * * * public school * * * in the second of the academic years or terms * * *.

The local claims deputy and an appeals tribunal determined that claimants "performed services during the 1977–1978 school year as a result of [their] 'active' substitute teacher status and [they have] been continued on the 'active' substitute teacher status for the 1978–1979 school year." They concluded, therefore, that the school district provided "reasonable assurance" that claimants "will perform services in any such capacity" during the 1978–1979 school year. The commissioner's representative concurred.

1. Under Minn.Stat. § 268.08, subd. 6(a) (1978), a claimant is ineligible for benefits if she receives a reasonable assurance that she will perform services "in any such capacity" in the second of two consecutive academic terms or years. Respondents argue that "capacity" refers only to the *type* of services to be performed, namely "instructional, research, or principal administrative." We decline to adopt this view. This restrictive interpretation would deny unemployment benefits between academic years to a teacher who taught full-time during one academic year and was assured of one day's employment as an instructor in the next year. Such a result would not comport with the expressed policy of aiding "persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1978).

Claimants, on the other hand, urge that the phrase "in any such capacity" requires an assurance of employment in the second academic year under terms that equal or exceed those of the first year. We also decline to adopt this expansive construction. The statute aims to combat "economic *insecurity.*" The goal is "stable employment," not an absolute immunity from *any* decrease in the terms and conditions of employment.

■ Taking into account the purposes of the statute, and recognizing that each case must be resolved on its own facts, we hold that under Minn.Stat. § 268.08, subd. 6(a) (1978), school teachers are ineligible for unemployment benefits between consecutive academic years when they have received reasonable written assurance of reemployment in the second year under terms that approximate or approach those of the first year.

2. Turning to the record before us, examination discloses that, at the end of the 1977–1978 academic year, claimants were labeled "substitutes," but nevertheless were employed as full-time teachers under written contracts. They earned credit toward tenure and received compensation as if employed under continuing contracts.

1. The statute was intended to bring the state into compliance with requirements for federal participation in state unemployment programs and is patterned after 26 U.S.C.A. § 3304(a)(6)(A) (West 1979).

Following that academic year, claimants received written assurance that they would be continued as "substitutes." The record does not disclose the likelihood that they would receive long-term substitute positions in the second year. If long-term positions did not materialize, claimants would be relegated to working as short-term or on-call substitutes. Compared to long-term substitute employment, short-term and on-call employment is considerably more erratic and the compensation is significantly less. In addition, no credit toward tenure is earned.

The school district stated that teacher absences requiring substitutes are expected, and further, that the district is generally short of substitutes.

■ Based on these facts, respondents argue that claimants should be held ineligible because they were categorized as "substitutes" during the first year and they received written assurance that they would retain that status in the second. We reject such formalism. The substance—the terms and conditions—of a claimant's employment, not the label, must be determinative here, as it is in certain other situations. *See Minneapolis Fed'n of Teachers v. Minneapolis Spec. Sch. Dist. No. 1*, 270 N.W.2d 773 (Minn.1978) (calculation of time toward teacher tenure).

*Ykovchick v. Public Schools of Minneapolis*, 312 Minn. 139, 251 N.W.2d 626 (1977), is consistent with this approach. In that case, decided under an earlier statute, eligibility was denied to a teacher employed in the first year as an on-call substitute, a position by nature involving sporadic employment, who then received assurance of performing the same type of services under the same conditions in the second academic years.

■ We conclude that the evidence in this record, detailed above, is inadequate to support a finding that claimants were ineligible under § 268.08, subd. 6(a). The evidence indicates that the character of the employment which claimants could look forward to in the second year was substantially different and less desirable than their first year's employment. However, since the meaning of the statute was not settled, we remand to allow the parties an opportunity to present further evidence, if there be any, in light of the statute as construed. We also note that any such evidence must relate to facts available on the dates of the initial determinations.

Reversed and remanded.