517 A.2d 594

Ruth Ripka Abel, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Tredyffrin-Easttown School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 10, 1986, before Judges CRAIG and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Leonard V. Tenaglia,* with him, *Lyn B. Schoenfeld, Richard, DiSanti, Hamilton, Gallagher & Paul,* for petitioner, Ruth Ripka Abel.

*Edward Griffith,* with him, *Catherine Hill Kunda, Duane, Morris & Heckscher,* for petitioner, Tredyffrin-Easttown School District.

No appearance for respondent.

*William Fearen,* with him, *Richard C. Lengler, Cleckner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE BARRY, November 14, 1986:

These appeals result from orders of the Unemployment Compensation Board of Review (Board), the first of which granted benefits to the claimant for the weeks ending July 14, 1984, through September 1, 1984, and the second of which denied benefits for the weeks ending September 8, 1984 through November 24, 1984. The claimant, Ruth Ripka Abel, appeals the latter order (2305 C.D. 1985), while the employer, Tredyffrin-Easttown School District (school district or employer), appeals the former (2312 C.D. 1985).

The facts are not in dispute. Claimant was last employed, before her resignation on July 11, 1984, as a

substitute teacher for the employer. This employment had lasted eleven years, with the final three years as a long-term substitute, an employment position governed by contract.

On June 18, 1984, however, at the end of the 1983-1984 school year, claimant was placed on the per diem substitute list, under the terms of which she would be called when needed to substitute on a day-to-day basis during the 1984-1985 school year. In response, claimant, on July 11, 1984, "because of the uncertainty of her working schedule associated with the per diem substitute arrangement, requested that she be removed from the per diem list . . . ."[1] Claimant's request to be removed was also made "in order [for her] to seek other full-time employment and to establish her eligibility for unemployment compensation benefits during the summer months."[2]

Claimant's summer attempts at seeking new employment were, however, unsuccessful. Thus, on September 11, 1984, she asked to be returned to the per diem list. From that point through November 24, 1984, claimant did in fact work as a per diem substitute, earning $960.00 during that period. Claimant asserted claims for benefits for these periods.

The Office of Employment Security denied claimant's application for benefits for both (1) the initial, summer period and (2) for the post-restoration autumnal period. The former denial was premised on the notion that claimant did not have good cause for her resignation. Section 402(b) of the Unemployment Compensation Law (Law),[3] 43 P.S. §802(b). The latter denial,

---

[1] *Board Decision* of 7/6/85 (Decision Allowing Benefits), Finding of Fact No. 4.

[2] *Id*. No. 7.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*.

meanwhile, was premised on her failure to earn, after her restoration and return to part-time work, a compurgative amount equal to or in excess of six times her benefit rate. Section 401(f) of the Law, 43 P.S. §801(f). The referee, however, reversed, reasoning (1) that claimant possessed, by virtue of her self-removal from the per diem list, no "reasonable assurance" of continuing employment with the school district; and (2) that, by virtue of the latter determination of *qualification* for benefits, claimant was not required to "purge" a prior disqualification by earning six times her benefit rate after returning to part-time employment.

On appeal, the Board affirmed with respect to the award of benefits for the summer months, but reversed with respect to eligibility during the autumnal period. That reversal stemmed from the Board's conclusion that claimant had failed to prove that her quitting was attended by necessitous and compelling circumstances. Claimant now appeals that decision to this Court, and the school district appeals the affirmance of benefits during the summer. The issues presenting themselves are strictly matters of law and are, as will be seen, inextricably related.

1. *Summer-Months Benefits—No. 2312 C.D. 1985*

The school district asserts that, by offering to put claimant on the per diem substitute list, it *gave* her a "reasonable assurance" of continued employment, and hence concludes that she should be adjudged ineligible for benefits during the summer months. The involved provision of the Act reads as follows:

> Benefits based on service for educational institutions . . . shall as hereinafter provided be payable in the same amount, on the same terms and subject to the same conditions as outlined in section 404(g)[,] except that:

(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period . . . to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or *reasonable assurance* that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

Section 402.1(1) of the Law, 43 P.S. §802.1(1) (emphasis added). "Reasonable assurance" is not defined in the unemployment compensation law, but we have consistently held that, in lieu of a formal written or oral agreement with respect to re-hiring, "where there is objective evidence of *mutual* commitment between the teacher and employer to recall the former or where the teacher has a reasonable expectation of returning to employment in the next academic term, the Board may properly deny benefits." *Goralski v. Unemployment Compensation Board of Review,* 48 Pa. Commonwealth Ct. 39, 41-42, 408 A.2d 1178, 1180 (1979) (emphasis added).[4]

---

[4] *See also Neshaminy School District v. Unemployment Compensation Board of Review,* 57 Pa. Commonwealth Ct. 543, 548, 426 A.2d 1245, 1247 (1981) ("So long as the *claimant desires* and *intends* to continue substitute work and [the employer] expects to offer such work . . . the employment relationship of a substitute teacher remains viable.") (emphasis added) (quoting *Louderback v. Unemployment Compensation Board of Review,* 48 Pa. Commonwealth Ct. 501, 504-05, 409 A.2d 1198, 1200 (1980)).

In the present case, there is no real dispute that the "necessary mutuality," *Guth v. Unemployment Compensation Board of Review,* 81 Pa. Commonwealth Ct. 79, 84, 473 A.2d 228, 231 (1984), did not exist, because claimant resigned from her position and thereby severed *any* relationship she had prior thereto with the school district. *Compare Foti v. Unemployment Compensation Board of Review,* 60 Pa. Commonwealth Ct. 128, 131-32, 430 A.2d 1043, 1045-46 (1981) (where claimant-teacher testified that he never intended to accept offer as per diem substitute, after having been employed as long-term substitute, and supported such testimony with evidence that showed he had applied for other jobs, *held:* claimant had sustained burden of showing "availability," and hence could not have had "reasonable assurance" for purposes of section 401.1(1)). The school district and *amicus,*[5] however, encourage this Court to disavow and overrule our previous cases articulating the "mutuality" doctrine. They argue that the on-going operative effect of the doctrine is to allow a teacher such as the present claimant to subvert the *intent* of the law—preventing the subsidization of vacation periods of those who know well in advance that they may be laid off for certain specified periods[6]—by removing themselves from a substitute list and then seeking re-employment at the end of the summer.

We decline, however, to overrule our precedents articulating the mutuality doctrine, as we conclude that doctrine to be entirely rational and appropriate. The circumstances of the present case illustrate those characteristics. Claimant in the involved controversy lost a permanent job featuring benefits and a generous,

---

[5] Pennsylvania School Boards Association.

[6] *See Davis v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 146, 148-49, 394 A.2d 1320, 1321 (1978) (extensive analysis).

steady wage level, and was reduced to a per diem substitute with no benefits and no guarantee as to steady wages.[7] As the family wage-earner,[8] claimant felt constrained to end her relationship with the school district and seek more advantageous and suitable employment. Her quitting constituted a severing of the relationship between her and the school district and, given that reality, any pre-existing, or continued unilateral "reasonable assurance" on the part of the school district would necessarily become a nullity. Further, at the point of her quitting claimant was no longer an employee and she had, realistically as well as theoretically, made herself "available for suitable work," *Foti,* 60 Pa. Commonwealth Ct. at 131-32, 430 A.2d at 1045-46, and, thus, eligible for benefits under the Law.[9]

---

[7] We recognize that, for purposes of section 402.1(1), reemployment in the same or different capacity is not a relevant factor in determining whether a reasonable assurance exists. *Neshaminy,* 57 Pa. Commonwealth Ct. at 547, 426 A.2d at 1247 ("The statute does not require that the reemployment be in the same capacity."). All this implicates, however, in the present controversy, is the fact that had claimant not severed her relationship with the school district, and had remained on the per diem list, she would have had a reasonable assurance, notwithstanding the substantial vocational demotion.

[8] *See N.T.,* 2/19/85, at 3, 4.

[9] The fact that claimant honestly stated that she wished to establish her eligibility for benefits under the Law during the summer months is not, in our view, a bar to her recovery. Since claimant had a legitimate qualifying reason for claiming benefits, the desire to claim those benefits cannot be considered disqualifying or sinister under the circumstances.

We also believe that claimant properly removed her name from the substitute list in July rather than waiting until the end of summer to ascertain if work might be available. There is no practical difference under either approach. A lack of mutuality may be found for the summer weeks under either view. We also believe it is rational to assert that the reason for the quit occurred at the time of the demotion, not at a later date.

We thus decline to hold that a school district's *unilateral* intention to employ a teacher constitutes a "reasonable assurance" under the Law. While the school district and *amicus* maintain that failure to declare this the rule will lead to abuse and subversion of legislative intent, we note that, in the present case, there was no particular assurance that the school district would re-hire claimant after her quitting, nor, for that matter, was there any particular inevitability that she would even re-apply in the fall. That she *did,* of course, is identified by the school district and *amicus* as evidence of abuse of the system and attempted circumvention of the statute. For the above-mentioned reasons, however, we do not feel constrained to accept such a view of affairs. We *recognize* that an abuse of the system *would* occur pursuant to a pre-conceived plan whereby a teacher would quit at the end of the school year, fully planning to re-apply in the fall, and where somehow re-hiring was guaranteed despite the quit. *But see,* in this respect, Part 3 of this Opinion. Where a teacher has severed her relationship with a school district, and no such pre-conceived plan is shown, however, it is simply a logical impossibility to declare that a "reasonable assurance" of continued employment exists.

2. *Post-Restoration Benefits—No. 2305 C.D. 1985*

Claimant's application seeking benefits from September 8, 1984 through November 24, 1984—the initial period following her restoration to the per diem list—was denied by the Board based upon its legal conclusion that claimant had not shown cause of a necessitous and compelling nature for her July 11, 1984 voluntary termination. Eligibility for the subject period was governed, in the Board's view, by section 401(f) of the Law, which provides as follows:

> Compensation shall be payable to any employee
> who is or becomes unemployed, and who—
>     . . . .

(f) Has earned, subsequent to his separation from work under circumstances *which are disqualifying under the provisions of subsections* 402(b), 402(e) and 402(h) of this act, remuneration for services in an amount equal to or in excess of six (6) times his weekly benefit rate irrespective of whether or not such services were in 'employment' as defined in this act.

*Id.* (emphasis added). In the present case, the Board concluded that claimant disqualified herself under section 402(b), 43 P.S. §802(b) (so rendering claimants who do not demonstrate necessitous and compelling circumstances for quitting), and had not, thereafter, as a factual matter, earned six times her benefit rate. A denial, of course, followed.

The record, however, supports the conclusion that claimant's quitting was attended by cause of necessitous and compelling circumstances. Claimant's change in employment status was drastic, and she testified that she was compelled to quit in order to seek employment which would provide a wage commensurate with her role as family breadwinner. In this respect this Court has long held "that a substantial reduction in pay can constitute a 'necessitous and compelling' cause for voluntarily terminating one's employment." *Ship Inn, Inc. v. Unemployment Compensation Board of Review,* 50 Pa. Commonwealth Ct. 292, 295, 412 A.2d 913, 915 (1980). *Cf. Swires v. Unemployment Compensation Board of Review,* 83 Pa. Commonwealth Ct. 367, 477 A.2d 593 (1984) (substantial change in working conditions may constitute necessitous and compelling circumstances for voluntary quit).

As we thus conclude that claimant's July 11, 1984 voluntary termination was *not* disqualifying, section 401(f) is inapplicable, and, of course, claimant is thereby

relieved from any need to have earned a compurgative amount of wages.

### 3. *Incompatibility of the Foregoing Board Decisions*

We note at this point an intrinsic incompatibility between the two Board decisions just reviewed. The Board could *not* have reached the conclusion that claimant was *entitled* to benefits for the summer months after an analysis under section 402.1(1) and then, logically, have announced that her quitting for those months was unattended by good cause, thus rendering her *ineligible* for later benefits under section 401(f). Such an announcement was, however, indeed made.

Section 402.1(1), we note, does not *grant* benefits, but merely operates, in a threshold manner, to either establish or not establish the existence of an on-going relationship between teacher and employer: if a reasonable assurance of continuing employment exists, the section provides that benefits shall *not* be paid. Once the Board concluded, in the present case, that there *was no* such reasonable assurance, the threshold into potential eligibility had been crossed, but this hardly compelled, as the Board seems to have thought, an *automatic* conclusion that claimant was eligible for benefits. That conclusion could and can only come after a second-level determination as to eligibility under the general provisions of the act, *i.e.,* whether claimant had been separated under the proper circumstances and whether he or she had made himself/herself available for work. The Board, in the present case, passively *made* such a determination, concluding that claimant voluntarily terminated her employment "in order to seek other full-time employment" due to "the uncertainty of her working schedule" under the prospective per diem arrangement, although no legal conclusions in this respect were articulated. These same factual

findings, which did not prevent the *granting* of benefits for the summer, produced, rather contradictorily, the Board's *later* conclusion under section 401(f) that claimant had not shown good cause for quitting, hence leading to a *denial* of benefits.

Herein lies the incompatibility. Claimant's quit was either attended by circumstances entitling her to benefits or it was not. Ultimately, the inconsistency, while perplexing, is harmless, as we have concluded that the record does support a voluntary termination attended by good cause. *See* Part 2 of this Opinion.

The above interpretation of section 402.1(1) is, however, important given the concerns of the school district and *amicus* over potential subversion of the intent of section 402.1(1). As we have stated, that section only denies, *presumptively,* benefits when a reasonable assurance is possessed—it does *not* automatically *grant* benefits when such assurance is *not* possessed. Rather clearly, a teacher could not quit—thereby negating any reasonable assurance under section 402.1(1)—in order to vacation in Tahiti and, at the same time, become eligible for benefits. The quitting would be unattended by necessitous and compelling circumstances. In the same sense, a teacher who is shown to have quit with the intent only to draw unemployment, while fully expecting to return to his or her employment in the fall, has not quit in the midst of necessitous and compelling circumstances, and would be ineligible for benefits during the summer months.

### 4. *Conclusion*

For the foregoing reasons, the decision of the Board docketed at No. 2312 C.D. 1985, is affirmed. The decision of the Board docketed at No. 2305 C.D. 1985 is reversed.

ORDER IN 2305 C.D. 1985

Now, November 14, 1986, the Order of the Unemployment Compensation Board of Review, No. B-242050, dated July 26, 1985, is hereby reversed.

ORDER IN 2312 C.D. 1985

Now, November 14, 1986, the Order of the Unemployment Compensation Board of Review, No. B-242051, dated July 26, 1985, is hereby affirmed.