545 A.2d 404

Chambers Development Company, Inc. et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Arthur A. Davis, in his capacity as Secretary of the Department of Environmental Resources and all others acting on their behalf, Respondents.

Argued April 21, 1988, before Judges DOYLE, BARRY and McGINLEY, sitting as a panel of three.

98

*Peter G. Veeder*, with him, *David G. Ries* and *Clifford B. Levin, Thorp, Reed & Armstrong*, for petitioners.

*Kenneth T. Bowman*, with him, *George Jugovic, Jr.*, for respondent, Department of Environmental Resources et al.

*Richard DiSalle*, with him, *Stanley R. Geary, Rose, Schmidt, Hasley & DiSalle*, and *James P. Liekar, Liekar and Liekar*, for respondent/intervenor, Township of Chartiers.

OPINION BY JUDGE DOYLE, July 21, 1988:

Before us is another in a series of appeals in the above-captioned matter which has been wending its way through our court system. Much of the procedural

history in this case is set forth in our prior opinion in *Chambers Development Co., Inc. v. Department of Environmental Resources,* 110 Pa. Commonwealth Ct. 432, 532 A.2d 928 (1987). Thus, we need not reiterate it in detail here. Suffice to say that Petitioner, Chambers Development Co., Inc. (Chambers) seeks to honor certain contracts it entered into with various New Jersey municipalities calling for it to accept and dispose of New Jersey waste in Pennsylvania landfill sites. Respondent, Department of Environmental Resources (DER), however, has attempted to impose daily volume limits on the amount of waste to be received at the sites and such action will allegedly frustrate Chambers in the performance of its contracts. The Township of Chartiers as a host site for the waste is another Respondent herein.

We shall attempt to summarize briefly the salient events which have occurred since our prior decision was issued. When that opinion was filed on October 26, 1987, we indicated that the preliminary injunction enjoining DER from implementing its daily volume limit program was dissolved as a matter of law. DER then issued orders, on November 2, 1987, to Chambers placing limits on the daily volume of waste it could process. On November 4, 1987, Chambers appealed the November 2 order to the Environmental Hearing Board (EHB). In addition, Chambers petitioned the EHB for a stay of the November 2 order. Hearings were conducted on the supersedeas petition which was then denied by the EHB on December 11, 1987. On December 13, 1987, Chambers petitioned this Court for permission to review the "effective denial" of the EHB to certify two controlling legal questions to this Court and also sought an injunction pending appeal. This Court, on December 14, 1987, temporarily enjoined DER from enforcing the daily volume limit program pending further ar-

gument, and on December 17, 1987 the EHB issued an order *granting* certification of two issues different from those Chambers set forth in its motion filed with this Court.[1] The following day, December 18, 1987, Senior Judge NARICK of this Court continued the stay of enforcement of DER's daily volume limit program pending a determination as to Chambers' petition filed with this Court. On February 2, 1988, this Court granted Chambers' petition for review and agreed to hear an appeal from the EHB's order of December 11, 1987 to the extent it presented the following controlling issue of law:[2]

> Is 25 Pa. Code §21.78 invalid because it conflicts with the Pennsylvania Supreme Court's decision in *Pennsylvania Public Utility Commission v. Process Gas Consumer Group*, 502 Pa. 545, 467 A.2d 805 (1983)?

---

[1] The December 17, 1987 order of the EHB *refused* to certify the following two issues under 42 Pa. C. S. §702(b):

> First: Where a sanitary landfill operator has established a *prima facie* case that DER's volume controls are unconstitutional, and that imposition of DER's program will cause irreparable harm, are its due process rights violated if the EHB denies a supersedeas application based on increased pollution where the only evidence related to such a conclusion is speculative and involves operational aspects under DER regulation?

> Second: Is 25 Pa. Code §21.78 invalid because it conflicts with the Pennsylvania Supreme Court's requirement set forth in *Pa. Public Utility Comm'n v. Process Gas Consumer Group*, 502 Pa. 545, 467 A.2d 805 (1983), which requires a balancing test of factors including likelihood of success, irreparable harm and possible public injury?

[2] As noted in footnote 1, EHB in its December 17, 1987 order *denied* Chambers' request to certify this issue as a controlling issue of law. Accordingly, when this Court granted Chambers' petition for review, it did so pursuant to Pa. R.A.P. 1311.

Our February 2, 1988 order also continued the injunction pending appeal until final disposition of the petition. Subsequently, the EHB, on February 16, 1988, issued an order certifying the same two questions of controlling law that it had certified on December 17, 1987.

The EHB has certified to us the following questions:

First: Whether DER's Daily Volume Program violates the Commerce Clause of the United States Constitution?

Second: Whether DER's Daily Volume Program constitutes a valid and enforceable regulation under Pennsylvania law?

At oral argument the parties were asked whether they would like this Court to decide those issues at the present time. Requests were made for submission of additional briefs, and the parties did not unconditionally agree that the issues should be decided here and now. Additionally, this Court believes that these questions go to the very heart of Chambers' lawsuit and the EHB's certification of those questions seems to us to be an attempt to foist on this Court the ultimate merits of Chambers' case without first affording the agency charged with expertise in this matter the opportunity to do so. The wisdom of *not* prejudging the ultimate issue or issues is borne out by reference to the supplemental brief of Chambers when it argues: "although Chambers had not yet had an opportunity to present all the evidence related to the constitutional question, enough evidence exists in the record to establish that the motivation behind the implementation of the daily volume program was to prevent the importation of New Jersey waste." We must assume that DER has likewise not presented all of its evidence because it opposes the certification of the questions to this Court. For these reasons

we shall decline to decide these two issues at this juncture.[3]

Accordingly, we turn to the single narrow question properly before us, *i.e.*, whether the regulation appearing at 25 Pa. Code §21.78 is invalid as being inconsistent with *Process Gas*.[4] Regulation 21.78 states as follows:

> **Circumstances affecting grant or denial** [of a supersedeas]
>
> (a) The Board, in granting or denying a supersedeas, will be guided by relevant judicial precedent and the Board's own precedent. Among the factors to be considered are:
>
> (1) Irreparable harm to the petitioner.
>
> (2) The likelihood of the petitioner prevailing on the merits.
>
> (3) The likelihood of injury to the public or other parties, such as the permittee in third party appeals.
>
> (b) A supersedeas will not be issued in cases where pollution or jury [sic] to the public

---

[3] Although one of the criteria to be considered when ruling upon a supersedeas is the petitioner's likelihood of success on the merits, that fact alone does not qualify an order denying supersedeas as such an "interlocutory" order that it would qualify the underlying substantive issues as controlling issues of law the disposition of which would materially advance the ultimate termination of the matter. It was this rationale which prompted this Court in its order of February 2, 1988 and subsequent order of April 8, 1988 to state that the EHB has at no time issued any *orders* taking a position with regard to the *issues* it purports to certify. The extensive opinion and order of EHB issued February 16, 1988 is most instructive and admirable, but nevertheless was not an interlocutory order which decided these issues.

[4] Unlike the other issues certified by EHB, this issue does deal directly with the interlocutory order of EHB denying the supersedeas.

health, safety or welfare exists or is threatened during the period when the supersedeas would be in effect.

(c) In granting a supersedeas, the Board may impose conditions that are warranted by the circumstances, including the filing of a bond or other security.

It is Chambers' position that this regulation is invalid because it is inconsistent with *Process Gas*. In *Process Gas* our State Supreme Court enunciated that the grant of stay is warranted if the following criteria are met:

(1) The petitioner makes a strong showing that he is likely to prevail on the merits;

(2) The petitioner has shown that without the requested relief he will suffer irreparable injury;

(3) The issuance of a stay will not substantially harm other interested parties in the proceeding; and

(4) The issuance of a stay will not adversely affect the public interest.

*Id.* at 552-553, 467 A.2d at 808-09 (adopting the test set forth in *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921 (D.C. Cir. 1958) as defined in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C. Cir. 1977)). Chambers contends that (1) subsection (b) of Regulation 21.78 establishes an independent criterion not required by *Process Gas* and (2) the regulation does not provide for a supersedeas where a petitioner has established "a substantial legal issue" in accord with *Process Gas.*

Assuming without deciding that the regulation is substantively different than the *Process Gas* standard,[5]

---

[5] We would emphasize that this is an assumption only, as it would appear to us that, except for subsection (b) dealing with

we are unpersuaded that that fact renders the regulation invalid. In order to explain our conclusion, a brief discussion of regulatory rule-making is necessary. As our State Supreme Court observed in *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 76-78, 313 A.2d 156, 169 (1973):

> There is a well-recognized distinction in the law of administrative agencies between the authority of a rule adopted by an agency pursuant to what is denominated by the textwriters as *legislative* rule-making power and the authority of a rule adopted pursuant to *interpretative* rule-making power. The former type of rule 'is the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the Legislative body', and 'is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.' K.C. Davis, 1 Administrative Law Treatise §5.03, at 299 (1958). A court in reviewing such a regulation, 'is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action . . . involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be "so entirely at odds with fundamental principles . . . as to be the ex-

___

pollution or injury to the public health, the regulation adopted by EHB shadows the *Process Gas* standard. *See, e.g., Township of Chartiers v. William H. Martin, Inc.,* 518 Pa. 181, 542 A.2d 985 (1988).

pression of a whim rather than an exercise of judgment. . . ." '

An interpretative rule on the other hand depends for its validity not upon a *law*-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation. (Citations and footnote omitted.) (Emphasis in original.)

The regulation at issue here has been promulgated by an express grant of authority pursuant to Section 1920-A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S.. §510-20[6] and Section 105 of the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §6018.105. Accordingly, we need only decide whether the regulation was issued pursuant to proper procedure, and if it is reasonable. The procedural promulgation of the regulation is not herein challenged. Therefore, we need not consider that matter further and shall presume the agency acted properly in implementing the regulation. *See generally Pettit v. Civil Service Commission,* 4 Pa. Commonwealth Ct. 124, 285 A.2d 223 (1971) (applying a presumption of administrative regularity).

As to the question of whether the regulation is reasonable, we can easily conclude that it is when viewed

---

[6] Section 1920-A was added by Section 20 of the Act of December 3, 1970, P.L. 834.

in light of the declaration of public policy set forth in Section 102 of the Solid Waste Management Act, 35 P.S. §6018.102. Section 102(4) provides, *inter alia,* that the Act's purpose is to "protect the public health, safety and welfare. . . ." It is beyond any rational debate that the regulation seeks to do just that.

Having, thus, decided that the regulation is valid, we shall now consider whether it was properly applied to the facts of this case.[7] In so doing we must determine whether the EHB's findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. Substantial evidence has been previously interpreted to mean such relevant evidence as one of a reasonable mind might accept as adequate to support a conclusion. *Murphy v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 23, 480 A.2d 382 (1984).

Chambers contends first that there is insufficient evidence to establish a threat of public harm. The EHB found, however, that the Department's witness, Joseph Pezze, an air pollution control engineer, opined that the increased volume of waste would result in increased vehicular traffic, which in turn would trigger an increased volume of particulate emissions. Additionally, the effect of this additional waste was testified to by Chartiers residents who spoke of bulldozers running late at night and early on Saturday morning, vehicular noise, damage to roads from increased truck traffic, and dust caking on screens as well as malodors. The EHB, in the decision section of its adjudication, relying upon this evidence,

---

[7] Although we have not been expressly asked to review the merits of whether the supersedeas should have been denied, we shall do so following the procedure employed by our State Supreme Court in the *Process Gas* case. Further, for this reason, we deny Chartiers Township's request in its brief for costs of preparing its response brief on the merits of the supersedeas petition.

indicated that "at the very least, there is a potential for air pollution through increased particulate emissions and that the increased particulate emissions already existing constitute a nuisance." EHB adjudication of February 16, 1988, p. 21. We cannot say, having reviewed evidence, that the EHB's conclusion was unreasonable under the *Murphy* standard.

Additionally, in considering whether Chambers had demonstrated irreparable harm, the EHB found that Chambers "negotiated the contracts with the New Jersey counties with full knowledge of [DER's] interpretation of the daily volume limits in solid waste permits and even negotiated clauses in the contracts to protect themselves in the event [DER] took action to enforce the permit conditions." EHB adjudication of February 16, 1988, p. 13. Thus, the EHB discounted Chambers' claims of irreparable injury concluding, in essence, that it had knowingly chosen its course of action and that the public should not be held to suffer for that. Based upon these findings and keeping in mind our limited scope of review, we cannot say that the EHB acted improperly in denying the supersedeas.

Accordingly, we affirm its order.

## ORDER

Now, July 21, 1988, it is determined that 25 Pa. Code §21.78 is not invalid and, therefore, the order of the Environmental Hearing Board denying the supersedeas petition in accordance with the criteria set forth in that Regulation is hereby affirmed. It is further ordered that the injunction pending appeal entered by this Court on December 14, 1987 and continued in effect by order of this Court dated December 18, 1987 is dissolved.