SLIPPERY ROCK AREA SCHOOL
DISTRICT, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 2008.

Decided Dec. 22, 2008.

Michael D. Hnath, Butler, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Christopher G. Giovanis, Asst. Counsel for Employment Security and Sean F. Creegan, Deputy Chief Counsel for Employment Security, Harrisburg, for intervenor, Department of Labor and Industry.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge SMITH–RIBNER.

Slippery Rock Area School District (School District) appeals from an order of

the Unemployment Compensation Board of Review (Board) that reversed the decision of an unemployment compensation referee (Referee) and granted benefits to Heather LiVorio (Claimant), a long-term substitute teacher in the 2006–2007 school year who was provided a reasonable assurance of her return to work in the fall as a day-to-day substitute teacher. The School District questions whether the Board erred as a matter of law in relying upon 34 Pa.Code § 65.161(a)(2) to conclude that Claimant was not ineligible for benefits under Section 402.1(1) of the Unemployment Compensation Law (Law)[1] and whether the Department of Labor and Industry (Department) exceeded its authority in promulgating 34 Pa.Code § 65.161(a)(2) to amend the Law.

Claimant was employed by the School District from August 28, 2006 through June 13, 2007 as a long-term substitute teacher. Her position was covered by a collective bargaining agreement, and she was entitled to ten sick days. The Board calculated her pay rate as $126.34 per day. On June 11, 2007, the School District sent Claimant a letter of reasonable assurance stating that if she so desired she would again be called upon "on a day-to-day substitute basis during the 2007–08 school year." Employer Ex. 1; Reproduced Record 15a. Claimant returned the accompanying card indicating her wish to remain on the day-to-day substitute list. As a day-to-day substitute, she would receive $80 per day and no sick days. She applied for benefits beginning with the waiting week ending June 16, 2007.

Section 402.1 of the Law, relating to benefits based on service for educational institutions, provides in relevant part:

(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administra-

tive capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or *a reasonable assurance that such individual will perform services in any such capacity* for any educational institution in the second of such academic years or terms. (Emphasis added.)

The Referee noted that Claimant was made an offer to be placed on a substitute list and that she accepted it. Although Claimant was a long-term substitute before, the Referee determined that she did have reasonable assurance of returning to work for the School District and therefore denied benefits under Section 402.1(1).

The Board on Claimant's appeal quoted Section 402.1(1) of the Law and then concluded that she did "not have a reasonable assurance of returning to work as the terms and conditions of the employment as a day to day substitute are substantially less that [sic] the terms and conditions of a long-term substitute." Board's Decision, p. 2. Although the Board did not cite the regulation at 34 Pa.Code § 65.161, adopted January 3, 2003, relating to reasonable assurance, the Board applied it. Section 65.161 provides in part, with added emphasis:

(a) For purposes of section 402.1 of the law (43 P.S. § 802.1), a contract or reasonable assurance that an individual will perform services in the second aca-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(1).

demic period exists only if both of the following conditions are met:

(1) The educational institution or educational service agency provides a bona fide offer of employment for the second academic period to the individual.

(2) *The economic terms and conditions of the employment offered to the individual for the second academic period are not substantially less than the terms and conditions of the individual's employment in the first academic period.*

. . . .

(c) *For the purposes of subsection (a), economic terms and conditions of employment include wages, benefits and hours of work.*

The School District argues that 34 Pa. Code § 65.161 is invalid insofar as it establishes an "economic equivalency" requirement.[2] It quotes the explanation of Section 402.1 of the Law in *Haynes v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 541, 543, 442 A.2d 1232, 1233 (1982): "The intent of the legislature in passing Section 402.1 was to eliminate the payment of benefits to school employees during summer months and other regularly scheduled vacations, on the rationale that such employees are able to anticipate and prepare for these nonworking periods." It cites *Lyman v. Unemployment Compensation Board of Review*, 76 Pa.Cmwlth. 348, 463 A.2d 1270 (1983), where the Court ruled that a long-term substitute counselor had received reasonable assurance of return under Section 402.1 based on her receipt of a May 1981 letter placing her on the rolls as a per diem substitute in the fall. A fiscal crisis and strike resulted in her receiving no as-

signments, but she acknowledged that the May 1981 letter was in good faith.

The School District also cites *Board of Education, School District of Philadelphia v. Unemployment Compensation Board of Review*, 147 Pa.Cmwlth. 654, 609 A.2d 596 (1992), where long-term substitute teachers were converted to per diem substitutes at the end of the year under the district's policy. The Court considered the meaning of reasonable assurance of performance of service "in any such capacity" in the second year or period in Section 402.1(1), and it concluded that the antecedent was the phrase "in an instructional, research, or principal administrative capacity" in the same sentence. In *Neshaminy School District v. Unemployment Compensation Board of Review*, 57 Pa.Cmwlth. 543, 426 A.2d 1245 (1981), the Court had held that Section 402.1(1) does not require reasonable assurance of employment in an identical capacity. As the per diem substitute positions were in an instructional capacity, Section 402.1(1) applied and the claimants were not eligible for benefits.

The School District emphasizes Section 201(a) of the Law, 43 P.S. § 761(a), which provides: "[The Department] shall have power and authority to adopt, amend, and rescind such rules and regulations ... and take such other action as it deems necessary or suitable. *Such rules and regulations shall not be inconsistent with the provisions of this act.*" (Emphasis added.) *See Teledyne Columbia–Summerill Carnegie v. Unemployment Compensation Board of Review*, 160 Pa.Cmwlth. 17, 634 A.2d 665 (1993) (upholding regulation as not in conflict with the Law). It contends

---

**2.** The Court's review in this matter is limited to determining whether there was any constitutional violation or error of law, whether any practice or procedure of the Board was not

followed and whether the necessary findings of fact are supported by substantial evidence. *Procito v. Unemployment Compensation Board of Review*, 945 A.2d 261 (Pa.Cmwlth.2008).

that the regulation is clearly inconsistent with the Law.

It maintains that the Department's position set forth in commentary at 33 Pa. B. 25 (2003) is flawed. The Department stated that the purpose of adopting 34 Pa. Code § 65.161 was to address a concern over Section 3304(a)(6)(A) of the Federal Unemployment Tax Act (FUTA), 26 U.S.C. § 3304(a)(6)(A), with regard to the principle of "reasonable assurance." The text of that federal statute is very similar to that of Section 402.1(1) of the Law. The United States Department of Labor (US-DOL) Unemployment Insurance Program Letter (UIPL) 4–87, 52 Fed.Reg. 3889 (February 6, 1987), states that a reasonable assurance of employment exists only if there is a bona fide offer of employment in the second period and the terms and conditions of the job offered are not substantially less than those in the first period. The Department acknowledged in its commentary that adopting the regulation would have changed the results in a number of published decisions of the Court. The School District posits that where a change in a regulation changes the result, when the Court consistently has interpreted the statute to the contrary, the assertion that the regulation is not inconsistent with the statute cannot follow.

The Board points out that the Pennsylvania unemployment tax system is part of a cooperative federal-state program administered under the FUTA, which provides grants for the cost of administering state programs and allows payments by employers to state programs to be taken as a credit against the federal tax for unemployment compensation if they comply with federal requirements. Under 26 U.S.C. § 3304(a) and (c), the Secretary of Labor must annually certify each state program. A finding of nonconformity could result in elimination of federal grant revenue and tax credits so the legislature enacted Section 609 of the Law, added by Section 10 of the Act of March 24, 1964, Special Sess., P.L. 53, 43 P.S. § 849:

Any provisions in this act to the contrary notwithstanding, whenever the Governor of this Commonwealth is formally notified by the Secretary of the United States Department of Labor or any authorized officer of the Federal government that any provision or provisions of this act are inconsistent with any Federal law with which State employment security laws are required to conform as a condition for the allowance of credit against Federal taxes on payrolls or the receipt of funds for the administration of employment security programs, such provision or provisions upon proclamation by the Governor, shall be deemed inoperative and of no effect. Such proclamation shall include when necessary such provision or provisions as may be necessary to remedy such inconsistency which shall have the full force and effect of law from the date thereof if approved by appropriate amendment to this act in the next session of the General Assembly having jurisdiction of the subject matter, otherwise such provision or provisions shall be null and void from the date of the General Assembly's disapproval or adjournment, whichever occurs the earlier.

Because of a ruling by the Court in an unpublished opinion that a full-time teacher offered substantially less terms for return to work nonetheless had a reasonable assurance of return, USDOL notified the Department that it was out of conformity with federal law, and the Department adopted 34 Pa.Code § 65.161. The Board characterizes the adoption of Section 65.161 as a valid exercise of state power, and it notes that this Court discussed the regulation in four cases and did not sug-

gest in any of them that the Board lacked authority to adopt the regulation.[3]

The Department as Intervenor admits that before the adoption of 34 Pa.Code § 65.161 the reasonable assurance mandate did not include an economic equivalency factor. It asserts that *Lyman* and *Board of Education, School District of Philadelphia* were decided with reference to the expectation of reemployment and that the School District cites no support for the view that judicial interpretation estops an agency from later promulgating a regulation inconsistent with the prior interpretation. The Department relies on *Elite Indus., Inc. v. Pennsylvania Public Utility Commission,* 574 Pa. 476, 832 A.2d 428 (2003), where the Public Utility Commission changed a regulation and exempted limousine license applicants from a requirement to show public necessity for the service while an appeal was pending from denial of an application. This Court reversed the grant of authority, but the Supreme Court disagreed. Noting the agencies' legislative rulemaking authority discussed in *Rohrbaugh v. Pennsylvania Public Utility Commission,* 556 Pa. 199, 727 A.2d 1080 (1999), it held: "Thus, an agency may revise its policies and amend its regulations in interpreting its statutory mandates. Further, past interpretation of a statute, though approved by the judiciary, does not bind the PUC to that particular interpretation." *Elite Indus.,* 574 Pa. at 483, 832 A.2d at 431–432.

The Department also cites *Popowsky v. Pennsylvania Public Utility Commission,* 589 Pa. 605, 910 A.2d 38 (2006), where the Supreme Court held that the Commission was free to change a regulation interpreting statutory requirements for public utilities to provide adequate service so as to require water customers to contribute to the extension of water service where the cost of the project would exceed expected revenue. The court stated that the Commission was not obliged to adopt regulations consistent with intermediate appellate judicial interpretations that existed in the absence of explicit regulations, citing *Elite Indus.,* and that if the line extension regulations were valid a case decided before their adoption provided no basis upon which to upset the regulations.

The Department states that a regulation adopted within an agency's legislative rulemaking authority is "valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 76–77, 313 A.2d 156, 169 (1973). It declares that the regulation is within the power granted under Section 201 of the Law and that the School District has not alleged procedural deficiencies; thus a presumption of administrative regularity applies. *Chambers Dev. Co., Inc. v. Department of Environmental Resources,* 118 Pa.Cmwlth. 97, 545 A.2d 404 (1988).

**3.** On the merits of Claimant's claim under Section 402.1(1) of the Law, the Board argues that the change from a long-term substitute covered by a collective bargaining agreement (earning $126.34 per day with ten sick days) to a day-to-day substitute (earning $80.00 per day with no sick days) did not have economic equivalence, citing *Abel v. Unemployment Compensation Board of Review,* 102 Pa. Cmwlth. 209, 517 A.2d 594 (1986) (holding that proposed change from full-time and long-term substitute teaching to placement on day-to-day substitute list was so drastic as to constitute necessitous and compelling reason to quit under Section 402(b) of the Law, 43 P.S. § 802(b)). Claimant worked entirely as a long-term substitute during a full school year. In light of *Abel* and *Johnson v. Independent School District No. 535,* 291 N.W.2d 699 (Minn.1980) (holding that state act included economic equivalence requirement), the Board submits that it correctly concluded that Claimant had no reasonable assurance of return.

Also, a court may not substitute its discretion for that of administrative officers acting within the bounds of their administrative powers, and even error or lack of wisdom is not sufficient. *Rohrbaugh.*

The Department maintains that the courts have interpreted the benefits provisions liberally and broadly to alleviate the distress caused by involuntary unemployment, *see Penn Hills School District v. Unemployment Compensation Board of Review*, 496 Pa. 620, 437 A.2d 1213 (1981), and that exclusions from coverage must be construed narrowly. *United States Steel Corp. (USX Clairton Works) v. Unemployment Compensation Board of Review*, 579 Pa. 618, 858 A.2d 91 (2004). Section 65.161 furthers the remedial and humanitarian purposes of the Law, and it brings the interpretation of reasonable assurance in Section 402.1(1) into conformity with the FUTA. Section 207(a)(1) of the Law, 43 P.S. § 767(a)(1), requires the Secretary of Labor and Industry to cooperate with the USDOL to the fullest extent consistent with the Law and to adopt rules, regulations and standards as needed to secure all advantages available under Federal law. The USDOL interpreted the FUTA in UIPL 4–87 as requiring economic equivalency to establish reasonable assurance. In *Glassmire v. Unemployment Compensation Board of Review*, 856 A.2d 269, 275 (Pa.Cmwlth.2004), the Court stated: "We are bound to follow Pennsylvania law interpreting 402.1 of the Law and not the [sic] by the interpretation of 'reasonable assurance' set forth in the program letter. That said, Pennsylvania has essentially interpreted the term 'reasonable assurance' in accord with UIPL 4–87 through the issuance of its regulations."

■ The Court is not persuaded by arguments presented by the Board and the Department. Court cases, including *Glassmire*, have applied 34 Pa.Code § 65.161(a)(2), but until now there has never been a challenge to its validity under the Law. There is no disagreement that the results in very similar cases may differ based on whether they were decided before or after the adoption of the regulation. *Compare Board of Education, School District of Philadelphia with Glassmire.* Although the Department characterizes the change as not an "amendment" to the Law, the Court observes that it works a substantial change but that it was not adopted pursuant to the procedure expressly provided by the legislature for accomplishing such a change. Section 609 of the Law, quoted above, provides a procedure under which the Governor may proclaim any offending provision to be inoperative and may proclaim provisions necessary to remedy an inconsistency with federal law. The Governor's action is subject to review by the legislature at the next appropriate session and ratification by means of amendment to the Law or disapproval of any change that the Governor has proclaimed. The salutary feature of Section 609 is its assurance that the legislature ultimately is responsible for any change to the Law at the behest of federal authorities to render it consistent with federal law. Despite the Board's reference to Section 609 as a source of authority for adoption of 34 Pa.Code § 65.161, Section 609 plainly does not permit changes in the Law to conform to federal law by means of an agency regulation.

■ The Court disagrees with the notion that the economic equivalency requirement of 34 Pa.Code § 65.161 was necessary in order to comply with federal law. The language in 26 U.S.C. § 3304(a)(6)(A)(i) is identical to the reasonable assurance language in Section 402.1(1) of the Law: it does not specify an "economic equivalency" requirement. Although the UIPL states the requirement, a UIPL is not binding authority upon the

Court or Commonwealth agencies as it merely is an administrative interpretation of federal law. *Montgomery County Head Start v. Unemployment Compensation Board of Review,* 938 A.2d 1137 (Pa. Cmwlth.2007); *Glassmire.* Furthermore, the Court rejects the Department's argument based upon *Popowsky* and *Elite Indus.*

■ In *Popowsky* the Supreme Court noted that it had long recognized the distinction between regulations adopted pursuant to a grant of legislative authority versus adoption pursuant to interpretive rule-making powers. It explained that legislative rule-making is an " 'exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the legislative body, and is as valid and is as binding upon a court as a statute if it is[:] (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.' " *Id.,* 589 Pa. at 630, 910 A.2d at 53 (quoting *Rohrbaugh,* 556 Pa. at 208, 727 A.2d at 1085, and citing 1 K.C. Davis, Administrative Law Treatise § 5.03 (1958)). Such regulations are not reviewed for wisdom but only for being so at odds with fundamental principles as to be the expression of whim. *Popowsky.*

■ An interpretive rule, on the other hand, " 'depends for its validity not upon a Law-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets.' " *Id.* (quoting *Girard School District v. Pittenger,* 481 Pa. 91, 95, 392 A.2d 261, 263 (1978)). Interpretive rules are due some deference, but ultimately the meaning of the statute is a question of law for the court, and when convinced that the interpretive regulation is unwise or violative of legislative intent the courts will disregard the regulation. *Popowsky.* The regulation at issue in *Popowsky* was deemed to be adopted under the Commission's legislative authority, where the statute involved, Section 1504(1) of the Public Utility Code, 66 Pa.C.S. § 1504(1), vested broad powers in the Commission to "[p]rescribe as to service and facilities, including the crossing of facilities, just and reasonable standards, classifications, regulations and practices to be furnished, imposed, observed and followed by any or all public utilities." In that circumstance the Commission had authority through its delegated legislative power to change its policy and to change the regulation, regardless of previous interpretations by the courts.[4]

Section 402.1 of the Law and the Department's changed interpretation of it in 34 Pa.Code § 65.161 are not of the same character as the statutes and regulations at issue in *Popowsky* and *Elite Indus.*

---

4. In *Elite Indus.* the requirement to show a public demand or need was contained in 52 Pa.Code § 41.14, which specified the detailed requirements for an application for a motor common carrier certificate of public convenience. Section 1103(a) of the Public Utility Code, *as amended,* 66 Pa.C.S. § 1103(a), provided that the Commission should grant a certificate "only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." The Supreme Court quoted the *Rohrbaugh* discussion of legislative versus interpretive rule-making and quoted *Seaboard Tank Lines, Inc. v. Pennsylvania Public Utility Commission,* 93 Pa.Cmwlth. 601, 502 A.2d 762 (1985), describing the Commission's mandate to grant certificates of public convenience pursuant to Section 1103(a) as broad and noting that the legislature left the formulation of the criteria for grants of certificates to the Commission. The court held that the Commission's change in policy and regulations as to limousine applications was made in consideration of the public interest. Thus *Elite Indus.* also clearly was a case where an agency exercised legislative rule-making power and so was free to alter past policies regardless of prior court interpretations.

The legislature did not broadly declare that there would be an unemployment compensation system and then delegate legislative authority to the Department to formulate criteria for the grant or denial of benefits. Rather, the legislature created a detailed *statutory* scheme of unemployment compensation consisting of scores of sections, Sections 2–1203 of the Law, 43 P.S. §§ 751–914, specifying virtually all aspects of qualification for benefits and administration of the system. A listing of some of the headings of articles is illustrative: *see, e.g.,* Article II, Administration of the Act; Article III, Contributions by Employer and Employes; Article IV, Compensation; Article V, Determination of Compensation; Appeals, Reviews; Procedure; Article VII, Protection of Rights and Compensation; and Article VIII, Penalty Provisions.

As part of the detailed statutory scheme, the legislature addressed in Section 402.1(1) of the Law the narrow topic of regularly scheduled time away from work for specific professionals employed in the school setting. This Court then interpreted Section 402.1(1) in several cases and did not find an economic equivalency requirement in the provision. *Neshaminy*; *Board of Education, School District of Philadelphia*; *Richland School District v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 413, 459 A.2d 1358 (1983). The circumstances in the present case are totally distinct from those in *Popowsky* and *Elite Indus.*, and the regulation at 34 Pa.Code § 65.161 unequivocally was not adopted pursuant to a grant of legislative authority. Rather, it constitutes an interpretive rule, which, in any event, is inconsistent with the settled meaning of Section 402.1(1) as interpreted by this Court. Therefore, the Court holds that the economic equivalency provision of 34 Pa.Code § 65.161 is invalid and unenforceable. As a consequence, the Board's order must be reversed.

Judge BUTLER did not participate in the decision in this case.

## ORDER

AND NOW, this 22nd day of December, 2008, the order of the Unemployment Compensation Board of Review is reversed, and the order of the Unemployment Compensation Referee is reinstated. The economic equivalency provision of 34 Pa.Code § 65.161 is declared to be null and void.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that 34 Pa.Code § 65.161, which defines the term "reasonable assurance" for purposes of ascertaining eligibility for benefits under Section 402.1(1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, P.L. 41, 43 P.S. § 802.1(1), is invalid and unenforceable because it was not adopted pursuant to a grant of legislative authority.

I agree with the majority's conclusion in one respect, namely that Section 609 of the Law, added by Section 10 of the Act of March 24, 1964, Special Sess., P.L. 53, 43 P.S. § 849, is not a source of authority for adoption of 34 Pa.Code § 65.161. Majority Opinion at 1271. The authority to amend a statute lies with the General Assembly; consequently, a regulation may not amend a statute. If the Law is to be amended it has to be done in accordance with the procedures expressed in Section 609 of the Law, which were not followed in this instance. However, promulgation of 34 Pa. Code § 65.161 was neither the enactment of new legislation nor an amendment to Section 402.1(1) of the Law. Rather, 34 Pa.Code § 65.161 "defines reasonable assurance and sets forth criteria that must be met for reasonable assurance to exist." 33 Pa. B. 25. Therefore, 34 Pa.Code

§ 65.161 expands and develops the term as it is used in Section 402.1(1) of the Law because the Law fails to define the disqualifying concept of "reasonable assurance" of future employment.

I am of the opinion that promulgation of 34 Pa.Code § 65.161 was a valid exercise of the Department's legislative rule-making authority, pursuant to an express grant of legislative power by the General Assembly under Section 201(a) of the Law, 43 P.S. § 761(a), to enact regulations. The enabling statute, at Section 201(a) of the Law, provides:

> Section 201. General Powers and Duties of Department.—
>
> (a) [The Department] shall have power and authority to adopt, amend, and rescind such rules and regulations ... and take such other action as it deems necessary or suitable. *Such rules and regulations shall not be inconsistent with the provisions of this act.*

(Emphasis added). A regulation adopted within an agency's legislative rulemaking authority is "valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Pennsylvania Human Relations Commission v. Uniontown Area School District.*, 455 Pa. 52, 76–77, 313 A.2d 156, 169 (1973). A presumption of administrative regularity may be applied if 34 Pa.Code § 65.161 was promulgated within the power granted under Section 201 of the Law because Slippery Rock Area School District has not alleged any procedural deficiencies. *See Chambers Development Company, Inc. v.*

*Department of Environmental Resources,* 118 Pa.Cmwlth. 97, 545 A.2d 404 (1988).

The inquiry must focus on whether the promulgation of 34 Pa.Code § 65.161 was within the Department's express grant of power under Section 201(a). Critically, in assessing the validity of 34 Pa.Code § 65.161, the Court must determine whether it contravened Section 402.1(1) of the Law because the enabling statute, Section 201(a) of the Law, granted the Department the express authority to adopt, amend and rescind a regulation provided the regulation is consistent with the provisions of the Law.

The more precise question is whether 34 Pa.Code § 65.161 is invalid on the basis that it is inconsistent with Section 402.1(1) of the Law because its application may lead to a different outcome than under judicial interpretations of the statute which adjudications had occurred before 34 Pa. Code § 65.161 was promulgated.[1] A regulation may not be rendered invalid on such grounds if it was promulgated pursuant to a grant of legislative authority. *See Popowsky v. Pennsylvania Pub. Utility Commission,* 589 Pa. 605, 910 A.2d 38 (2006) (The Public Utility Commission had legislative authority to change a regulation regardless of previous interpretations by the courts).

In *Popowsky,* the regulation was challenged on the basis that it was inconsistent with a pre-regulation case. The Supreme Court held that the Public Utility Commission (PUC) was free to modify a regulation that interpreted statutory requirements that public utilities provide adequate services. The PUC was not obliged to adopt

---

1. There is no disagreement that the results in similar published decisions of the Court that involved long-term substitute teachers reassigned to work as day-to-day substitutes would differ based on whether they were decided before or after the adoption of 34 Pa. Code § 65.161. There are similar cases where

a claimant was denied benefits, but likely would have been granted benefits if economic equivalency was considered a factor. *See Neshaminy School District.* 426 A.2d at 1245; *Richland School District,* 459 A.2d at 1358; and *Board of Education, School District of Philadelphia,* 609 A.2d at 596.

regulations consistent with intermediate appellate judicial interpretations that existed in the absence of explicit regulations. *Popowsky* demonstrated that the Department, as an administrative agency, may promulgate a regulation to reflect its interpretation of a statute that it administers, even if that interpretation was different than a judicial interpretation that occurred prior to the regulation. Consequently, a past interpretation of the term "reasonable assurance" in Section 402.1(1) by this Court, that simply required a reasonable expectation of reemployment, did not deter the Department from promulgating a regulation that explains and expands the term "reasonable assurance" to include economic equivalency.

I respectfully disagree with the Majority's characterization to the contrary that 34 Pa.Code § 65.161 "constitutes an interpretive rule." Majority at 1273. The Majority's conclusion is based, in part, upon a distinction between the current controversy and *Popowsky*. Majority at 1273. The Majority concludes that "Section 402.1 of the Law and the Department's changed interpretation of it in 34 Pa.Code § 65.161 are not of the same character as the statutes and regulations at issue in *Popowsky* . . . ." Majority at 1272–73. As the Majority explains, the regulation at issue in *Popowsky* was adopted pursuant to the PUC's legislative authority as the statute involved, Section 1504(1) of the Public Utility Code, 66 Pa.C.S. § 1504(1), vested broad powers in the PUC to "[p]rescribe as to serve and facilities, including the crossing of facilities, just and reasonable standards, classifications, regulations and practices to be furnished, imposed, observed and followed by any or all public utilities." Unlike in *Popowsky*, the Majority reasons in the current controversy that "[t]he legislature did not broadly declare that there would be an unemployment compensation system and then delegate

legislative authority to the Department to formulate criteria for the grant or denial of benefits." Majority at 1272–73.

I believe the Majority's comparison of Section 402.1 of the Law to Section 1504(1) of the Public Utility Code in *Popowsky* is inappropriate. Instead, a comparison between Section 1504(1) of the Public Utility Code and Section 201(a) of the Law is appropriate and reveals that Section 201(a) of the Law is "of the same character" as the statute in *Popowsky*. Here, as in *Popowsky*, the General Assembly did delegate legislative authority to the Department because Section 201(a) of the Law vests broad powers in the Department to "adopt, amend, and rescind such rules and regulation . . . as it deems necessary or suitable. [But][s]uch . . . regulations shall not be inconsistent with the . . . act." Accordingly, I respectfully disagree with the Majority's conclusion and would find that 34 Pa.Code § 65.161 was promulgated pursuant to a grant of legislative power.

Based upon review of the Law and in light of the Supreme Court's decision in *Popowsky*, I must disagree with the Majority's conclusion that 34 Pa.Code § 65.161 is inconsistent with Section 402.1(1) of the Law and its promulgation was not a proper application of the Department's express statutory authority to enact regulations pursuant to Section 201(a). Accordingly, 34 Pa.Code § 65.161 is valid.

Upon finding that 34 Pa.Code § 65.161 is valid it necessarily follows that the Board properly relied on it to determine the claimant's eligibility for benefits. There is no legally valid basis to disturb the Board's application of 34 Pa.Code § 65.161 in the instant case. I would agree with the Board's determination that the claimant should be eligible for benefits pursuant to Section 402.1(1) of the Law.

Accordingly, I would affirm the Board's decision.

Judge PELLEGRINI and Judge FRIEDMAN join in this dissent.