634 A.2d 845

## COMMUNITY COLLEGE OF ALLEGHENY COUNTY, Petitioner,

### v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 18, 1993.

Decided Dec. 2, 1993.

Gregory Gleason, for petitioner.

Lisa Jo Fanelli, for respondent.

Before CRAIG, President Judge, FRIEDMAN, J.(P.), and SILVESTRI, Senior Judge.

CRAIG, President Judge.

The employer, Community College of Allegheny County (CCAC), appeals from a decision of the Unemployment Compensation Board of Review which, after taking additional evidence pursuant to this court's order of August 18, 1992, determined that the claimant, Paul Gulyas, was an unemployed educational institution employee during a regular academic term and therefore entitled to unemployment compensation. We reverse.

The history of this case is as follows. The claimant had worked as a part-time oral communications instructor at CCAC for 22 years. Throughout his years of employment, CCAC hired the claimant to teach specific courses and paid him a fixed amount for each course. The claimant taught courses in the fall and spring semesters and for 9 of the last 12 years he taught a 6–week summer course. He taught an oral communications course in the summers of 1988 and 1990, but not in 1989.

In a letter dated May 8, 1991, CCAC informed the claimant that "Based upon your prior employment with the College, this is to provide notice of reasonable assurance of continued part-time employment for the fall 1991 semester." During his employment at CCAC during the spring 1991 term, CCAC informed him that he would not be hired to teach a summer course.

Thereafter, the claimant applied for unemployment benefits, which the Office of Employment Security (OES) granted to the claimant for a 5–week period from May 25 through June 22, 1991. CCAC appealed to the referee who, after a hearing, affirmed the OES grant of benefits. CCAC then appealed to the board, which affirmed the referee's decision in an order dated October 17, 1991. An appeal to this court followed.

Proceeding with this case thereafter, in an opinion dated August 18, 1992 (No. 2401 C.D. 1991, filed August 18, 1992), we stated that, in accordance with § 402.1(1) of the Unemployment Compensation Law (Law),[1] teachers and other employees of educational institutions are not eligible for unemployment benefits during school breaks, if they have reasonable assurance of returning to their position when school resumes. Because the record before us did not contain evidence or findings concerning the school calendar, course offerings, student enrollment, and length of each academic term, we could not evaluate the nature of the 5–week May–June period in question. Thus, we remanded the case to the board to accept additional evidence and determine whether the period May 25

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802.1(1).

through June 22, 1991 constituted a regular academic term, or a break between regular terms, for purposes of eligibility pursuant to § 402.1(1) of the Law, 43 P.S. § 802.1(1).

Thereafter, the board remanded the case to a referee, who, acting as a hearing officer for the board, took additional evidence and testimony. After consideration of the augmented record, the board's analysis was that CCAC has three regular academic terms, spring, fall and summer. Because the claimant was laid off during what the board considered to be a regular academic summer term, the board determined that § 402.1(1) of the Law, 43 P.S. § 802.1(1) did not preclude the claimant from receiving benefits. Section 402.1(1) of the Law, 43 P.S. § 802.1(1) provides:

(1) With respect to service performed after December 31, 1977, in an instructional ... capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period *between two regular terms* whether or not successive ... to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms. (Emphasis added.)

■ Before this court, CCAC argues that the summer session is not a regular term because classes offered in the summer vary in length and fewer students are enrolled than in the fall and spring sessions.[2]

■ The board made the following relevant findings of fact:

4. There are three school terms based on the calendar that are issued to each instructor showing when the term starts,

2. Our scope of review in unemployment cases is limited to determining whether constitutional rights have been violated, an error of law committed, or whether the findings of fact are supported by substantial evidence. *Katz v. Unemployment Compensation Board of Review*, 115 Pa.Commonwealth Ct. 424, 540 A.2d 624 (1988).

when exams are to be administered and when final grades are to be submitted.

10. The C.C.A.C. course schedule for the fall and spring terms are similar to those shown in the summer schedule except there are more classes than are offered in the summer based upon student demand.

11. During the spring term of 1991, there were approximately 13 oral communications classes offered while during the summer term of 1991, there were six classes offered in oral communication.

13. For the 1990–91 fall term approximately 19,000 students were enrolled at C.C.A.C.

14. For the 1990–91 spring term approximately 16,000 students were enrolled at C.C.A.C.

15. For the 1990–91 summer term approximately 5,000 students were enrolled at C.C.A.C.

17. Students receive the same number of credits for course work completed when they attend the summer term.

The above findings do not support the board's conclusion that the summer period at CCAC is a regular term. The summer course offerings, compared to the fall and spring terms, differ as to enrollment, length, and class availability.

Initially, we note that CCAC's 1990–1993 catalog states that the academic year consists of a fall and spring semester with a variety of summer schedules offered.

According to the board's findings, CCAC experiences a significant decrease in enrollment during the summer. Although 5,000 students enrolled in the 1991 summer period, nearly four times as many were enrolled in the fall term and more than three times as many in the spring term.

The board determined that CCAC's 1990–91 fall term started on August 22, 1990, and ran through December 11–17, 1990. The spring term started on January 17, 1991, and ran through May 7–13, 1991. The summer sessions for the 1990–91 school year at CCAC were as follows:

1991 Summer Sessions

| Campus/Center | Weeks | From | To | Session |
|---|---|---|---|---|
| Allegheny Campus | 4 | May 20 | June 17 | I |
| Campus | 10 | May 20 | August 1 | I |
| | 6 | July 1 | August 9 | II |
| Homewood Brushton Branch | 10 | May 20 | August 1 | I |
| Downtown Center | 10 | May 20 | August 1 | I |
| Boyce | 6 | May 20 | June 27 | I |
| Campus | 10 | May 20 | July 26 | I |
| | 6 | July 1 | August 8 | II |
| North Campus | 8 | June 3 | July 26 | I |
| South Campus | 6 | May 20 | June 28 | I |
| | 10 | May 20 | July 30 | I |
| | 6 | July 1 | August 9 | II |

In contrast to the fall and spring terms which each last fifteen weeks, courses offered in the summer may last 4, 6, 8 or 10 weeks. Although two sessions are offered in the summer, not all of the campuses offer classes during both sessions. Three of the six campuses only offer courses during Summer Session I.

Courses offered in the summer require the same number of classroom hours and are given the same credits as those in other terms. However, CCAC offers fewer classes in the summer. In the spring of 1991, CCAC offered 13 oral communication classes at the Allegheny Campus, where the claimant worked, while during the summer 6 classes were offered.

Additionally, the 1991 spring and summer class schedules, which are a part of the record, indicate that the summer term is not the same as the other two. Students attending CCAC

during the spring who take at least twelve credits are considered full-time students, and pay a flat tuition rate. In the summer term, there is no distinction between full and part-time students; all of the students pay on a per credit basis.

Although CCAC regularly offers classes during the summer, that fact does not mean that the summer period is a regular academic term. In view of the significant decrease in enrollment during the summer, the definition of the academic calendar as consisting of a fall and spring term, and the varying lengths of course instruction in the summer, we conclude that the period in question—May 25, 1991 to June 22, 1991—is not a regular term, nor is it part of a regular term.

Thus, because the claimant was unemployed during a summer break, and had assurance of returning to work in the fall semester, he is not entitled to benefits. *Penn Hills School District v. Unemployment Compensation Board of Review*, 496 Pa. 620, 437 A.2d 1213 (1981).

Accordingly, the decision of the board is reversed.

## *ORDER*

NOW, December 2, 1993, the decision of the Unemployment Compensation Board of Review, Decision No. B–293986–B, dated November 16, 1992, is reversed.

FRIEDMAN, Judge, dissenting.

I must respectfully dissent from the majority opinion because I believe the summer session is a regular term within the meaning of § 402.1(1) of the Unemployment Compensation Law (Law).[1] Although CCAC does not operate at full capacity during the summer, five thousand is a substantial number of students. Each year, CCAC offers these students a signifi-

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802.1, *added by* Section 5 of the Act of July 6, 1977, P.L. 41, *as amended*, 43 P.S. § 802.1(1).

cant number of courses during the summer. These courses include no less than six oral communications courses. There is no qualitative difference between summer coursework and coursework performed during the remainder of the year. Students receive the same number of credits for the hours worked and are expected to work the same number of hours per course. This coursework applies toward students' degrees the same as any other coursework.

In *Katz v. Unemployment Compensation Board of Review,* 115 Pa.Commonwealth Ct. 424, 540 A.2d 624 (1988), we held that the spring term at the University of Pittsburgh is an academic term under § 402.1(2) of the Law, 43 P.S. § 802.1(2), because the students then enrolled were required to put in the same number of hours per course as they did other terms, and in return they received the same amount of academic credit. ˙We also noted that a mere decrease in enrollment during the summer months does not prevent coursework completed during the summer from being an academic term. I believe the same rationale applies in this case and that the summer session at CCAC should be considered a regular term.

Accordingly, I would affirm.