983 A.2d 1231

SLIPPERY ROCK AREA SCHOOL DISTRICT

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW

Appeal of Commonwealth of Pennsylvania,
Department of Labor and Industry.

Supreme Court of Pennsylvania.

Argued Sept. 15, 2009.

Decided Nov. 30, 2009.

376

Christopher George Giovanis, Sean F. Creegan, PA Department of Labor & Industry, for Commonwealth of Pennsylvania Department of Labor and Industry

Michael David Hnath, Dillon McCandless King Coulter & Graham L.L.P., for Slippery Rock Area School District.

Gerard Matthew Mackarevich, Maribeth Wilt-Seibert, PA Unemployment Compensation Board of Review, for Unemployment Compensation Board of Review.

Paul N. Lalley, Levin Legal Group, P.C., for Pennsylvania School Boards Association Insurance Trust, amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice GREENSPAN.

This appeal presents the question of whether a substitute school teacher was entitled to receive unemployment benefits for the summer vacation period between the 2006–07 and 2007–08 academic years under Section 402.1(1) of the Unem-

ployment Compensation Act (the Act).[1] In an *en banc* opinion, the Commonwealth Court held that as a long-term substitute returning in the second academic year as a day-to-day substitute, the school teacher would not be eligible to receive unemployment benefits. For the following reasons, we reverse.

## I. Background

During the 2006–07 school year, Heather J. LiVorio worked as a long-term substitute teacher in the Slippery Rock Area School District (School District). In that capacity, she earned $23,500 for the academic year (equivalent to $126.34 per day for 180 days) and received ten sick days. N.T. 08/08/2007, at 6–8. In June 2007, the School District notified Ms. LiVorio that she would not be retained as a long-term substitute and offered to place her on a list of day-to-day substitutes (paid *per diem* ) for the 2007–08 school year. Letter of Reasonable Assurance, dated June 11, 2007. The School District offered Ms. LiVorio a rate of $80.00 for each day worked and no paid sick day allowance. N.T. 08/08/2007, at 6–8. It did not guarantee that Ms. LiVorio would receive a certain number of or even any substitute teacher assignments. N.T. 08/08/2007, at 10.[2] Ms. LiVorio nonetheless accepted the School District's offer.

Subsequently, Ms. LiVorio filed an application for unemployment compensation, seeking benefits beginning after her last day as a long-term substitute teacher. On June 27, 2007, the Department of Labor and Industry (Department) notified Ms. LiVorio that she was eligible for unemployment benefits starting June 16, 2007. The School District appealed and after a hearing, the unemployment compensation referee de-

1. Act of Dec. 5, 1936, P.L. 2897, *as amended* (43 P.S. §§ 751–914).

2. Ms. LiVorio described her perception of the situation as follows:
 Basically, where my—I'm standing is that right now I'm unemployed. I do not have employment. I don't feel that a day-to-day substitute is the same as what I had the year before. It—I could be called one day in one week and I could be and I couldn't be called at all ... so it's not reasonable assurance that I'm going to work everyday.
 N.T. 08/08/2007, at 10.

nied Ms. LiVorio benefits. Citing Section 402.1(1) of the Act, the referee concluded that Ms. LiVorio was not entitled to unemployment benefits because she had "reasonable assurance" of returning to work for the School District during the 2007–08 academic year.[3]

Ms. LiVorio appealed to the Unemployment Compensation Board of Review (UCBR). The UCBR reversed the referee's decision in October 2007. The UCBR relied on the Department's regulation 34 Pa.Code § 65.161 (Regulation) to hold that Ms. LiVorio did not have "reasonable assurance" of returning to work for the School District as required by Section 402.1(1), because the terms and conditions of her employment as a day-to-day substitute teacher were substantially less favorable than those of her employment as a long-term substitute.[4] The UCBR reinstated Ms. LiVorio's unemployment benefits.

The School District appealed the UCBR's decision to the Commonwealth Court. The Department sought and obtained permission to intervene in the appeal. In May 2008, all the parties argued the case before a three-judge panel. Subsequently, the Commonwealth Court ordered the matter submitted on briefs to the court sitting *en banc*. In December 2008, the *en banc* Commonwealth Court reversed the decision of the UCBR and held that the Department's Regulation was invalid and unenforceable. *See Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Review*, 962 A.2d 1266, 1273 (Pa.Commw.2008). According to the Commonwealth Court, the Regulation was invalid because the Department did not have the authority to "formulate criteria for the grant or

---

**3.** As discussed in more detail *infra*, Section 402.1(1) provides in relevant part that a teacher is not entitled to receive unemployment benefits during the summer recess if she has "reasonable assurance" of returning as a teacher for the next academic year. *See* 43 P.S. § 802.1(1).

**4.** As discussed in more detail *infra*, the Regulation provides in relevant part that a teacher has "reasonable assurance" of employment after the summer recess if the school district offers, for the second academic year, a position that is substantially economically equivalent in terms of wages, benefits, and hours to the previous year's position. *See* 34 Pa.Code § 65.161.

denial of [unemployment] benefits" under the "detailed *statutory* scheme" of the Act. *Id.* (emphasis in the original). The Commonwealth Court concluded that the Regulation was merely interpretive, not a binding legislative regulation, and in fact inconsistent with Section 402.1(1) of the Act as interpreted in the Commonwealth Court's pre-Regulation decisions. *Id.* at 1273.

Judge McGinley filed a dissenting opinion in which Judges Pellegrini and Friedman joined. According to the dissent, the Regulation was a valid and binding legislative regulation promulgated as a proper exercise of the Department's rulemaking authority and is consistent with Section 402.1(1).

■ In January 2009, the Department filed a petition for allowance of appeal in which the UCBR joined. We granted permission to appeal on the following issues:

1) Whether the Commonwealth Court erred in holding that [the Regulation] is an interpretive regulation rather than an amendment or a binding legislative regulation with respect to Section 402.1 of the Act, 43 P.S. § 802.1(1)?

2) Whether the Commonwealth Court applied the appropriate test in holding that [the Regulation] is invalid?

As both issues present us with pure questions of law, our standard of review on appeal from the Commonwealth Court is *de novo* and the scope of review is plenary. *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare,* 600 Pa. 131, 963 A.2d 1274, 1276 (2009).

The Department and the UCBR, appellants, argue that the Commonwealth Court erred in holding the Regulation invalid and reversing the UCBR's adjudication. According to the appellants, the Regulation possesses all the characteristics of a valid and binding legislative regulation. The School District, as appellee, denies any error by the Commonwealth Court. According to the School District, the Regulation improperly amended Section 402.1 of the Act and is thus invalid. The School District also argues that the Regulation was adopted outside the scope of the Department's authority, which ren-

ders it a mere interpretive rule inconsistent with the settled meaning of Section 402.1(1).

■■■■ Pennsylvania courts have developed a two-step process for determining whether an administrative regulation is mandatory and binding. First, a court must determine what type of regulation it is examining (legislative or interpretive) and second, whether the regulation is valid. *See Pa. Human Rel. Comm'n v. Uniontown Area Sch. Dist.*, 455 Pa. 52, 313 A.2d 156, 169 (1973) (Opinion Announcing the Judgment of the Court) (*Uniontown* ).[5] Depending on what type it is, the regulation may be either binding (legislative) or merely entitled to deference (interpretive). *Id.* Generally, a legislative regulation establishes "a substantive rule creating a controlling standard of conduct." *Borough of Pottstown v. Pa. Mun. Ret. Bd.*, 551 Pa. 605, 712 A.2d 741, 743 (1998) (*Pottstown* ). A legislative regulation is valid if adopted pursuant to delegated legislative power, in accordance with the appropriate administrative procedure, and is reasonable. *See id.; see Uniontown*, 313 A.2d at 169. By comparison, an interpretive regulation merely construes and does not expand upon the terms of a statute. *See Pottstown*, 712 A.2d at 743. An interpretive regulation is valid if it "genuinely track[s] the meaning of the underlying statute." *Id.* If the interpretive regulation "is unwise or violative of legislative intent, courts disregard [it]." *Uniontown*, 313 A.2d at 169.

■■ The test for determining the validity of an interpretive regulation is also applied to a regulation that establishes a substantive rule in two other circumstances: if the regulation was adopted by a Commonwealth agency without lawmaking power or if it was adopted without meeting the appropriate procedural requirements. *See Bailey v. Zoning Bd. of Adjustment of City of Philadelphia*, 569 Pa. 147, 801 A.2d 492, 501 (2002) (holding that "where a statute does not explicitly provide an agency with rule-making powers, if the agency is

5. In *Uniontown*, a majority of the Justices agreed that this is the proper test of validity and that the Pennsylvania Human Relations Commission (PHRC) had authority to adopt legislative regulations. *See Uniontown*, 313 A.2d at 168 (OAJC) and 171–72 (Roberts, J. concurring).

directed to operate under the statute," it may adopt interpretive rules; also holding that regulation adopted without meeting procedural requirements was merely interpretive and not legislative).

The Regulation subject to this appeal states in relevant part:

(a) For purposes of section 402.1 of the law (43 P.S. § 802.1), a contract or *reasonable assurance* that an individual will perform services in the second academic period exists only if both of the following conditions are met:

(1) The educational institution or educational service agency provides a bona fide offer of employment for the second academic period to the individual.

(2) The economic terms and conditions of the employment offered to the individual for the second academic period are not substantially less than the terms and conditions of the individual's employment in the first academic period.

34 Pa.Code § 65.161(a) (emphasis added). "For the purposes of subsection (a), economic terms and conditions of employment include wages, benefits and hours of work." 34 Pa.Code § 65.161(c). The element of "reasonable assurance" addressed by the Regulation is known as economic equivalency. *See, e.g., Slippery Rock*, 962 A.2d at 1268.

■■■ Section 402.1(1) of the Act states in relevant part:

With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years ... to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a *reasonable assurance* that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

43 P.S. § 802.1(1) (emphasis added). To paraphrase Section 402.1(1), a school employee will not receive unemployment

benefits between academic years if she has a contract or reasonable assurance that she will perform services "in any [instructional, research, or principal administrative] capacity" for the school in the second year. 43 P.S. § 802.1(1). The Act does not define "reasonable assurance." *See id.*

## II. Type of Regulation

■ The parties agree that the Regulation created a new standard of conduct. The School District claims that the Regulation is an improper attempt by the Department to "amend" the Act.[6] On the other hand, the Department states that the creation of new rights and duties is properly an attribute of a binding legislative regulation. We agree with the Department.

This Court has differentiated a legislative regulation from an interpretive regulation, stating that a legislative regulation is substantive and creates a new controlling standard of conduct while the interpretive regulation does not. *Pottstown*, 712 A.2d at 743. Here, the Regulation was adopted by the Department in 2003 in response to a letter from the United States Department of Labor (USDOL) notifying the Commonwealth that it did not conform to federal law in its interpretation of "reasonable assurance." 33 Pa. Bull. 25 (January 4, 2003); *see* 26 U.S.C. 3304(a)(6)(A) (Federal Unemployment Tax Act requirements).[7]

---

**6.** The School District continually refers to the Department's action as "amending" Section 402.1 of the Act. The Regulation does not amend the language of Section 402.1. *See, e.g.,* Black's Law Dictionary, at 89 (8th ed.) (defining "amend" as "[t]o change the wording of; specif., to formally alter (a statute, constitution, motion, etc.) by striking out, inserting or substituting words"). Instead, the Regulation provides an *interpretation* of Section 402.1.

**7.** USDOL had taken special exception to the Commonwealth Court's interpretation of "reasonable assurance" in the unreported decision of *Musko v. Unemployment Comp. Bd. of Review*, No. 2740 C.D.1997, *appeal denied*, 558 Pa. 624, 737 A.2d 745 (1999). As the Department points out, however, *Musko* was not an exception but the rule in Pennsylvania. 33 Pa. Bull. 25. The effect of Pennsylvania's nonconformity to federal law is that USDOL could refuse to recertify the Commonwealth as eligible for federal funding. *U.S. Steel Corp. v. Unemployment Comp. Bd. of Review*, 579 Pa. 618, 858 A.2d 91, 97–98 (2004). The Department estimated that the cost to the Commonwealth

Before the Regulation was adopted, the Department and the Commonwealth Court looked solely at the school employee's expectation of returning to work in the next academic year to determine whether she had reasonable assurance pursuant to Section 402.1(1). *See Richland Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 74 Pa.Cmwlth. 413, 459 A.2d 1358, 1360–61 (1983); *see also Neshaminy Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 57 Pa.Cmwlth. 543, 426 A.2d 1245, 1247 (1981). This Court had not yet addressed the issue. In *Richland Sch. Dist.*, the Commonwealth Court recognized that "[t]he term reasonable assurance is not defined in the statute." 459 A.2d at 1360. The Commonwealth Court interpreted reasonable assurance "to require, absent a formal agreement to rehire, objective evidence of mutual commitment between the teacher and employer to recall the former so that the teacher has a reasonable expectation of returning to employment in the next academic term." *Id.* (internal quotations omitted).[8]

According to the Regulation, for purposes of receiving unemployment benefits, a teacher does not have reasonable assurance to return to work unless she is offered, during the second academic year, wages, benefits, and hours of work substantially equivalent to those of the first year. 34 Pa.Code § 65.161. As the parties agree, the Regulation extends unemployment benefits to a new class of eligible individuals, including Ms. LiVorio. At the same time, the Regulation imposes a new duty or standard of conduct on the School District. Under Pennsylvania law, the fact that the Regulation creates a new duty or standard of conduct indicates that it is a binding

of losing federal certification would be approximately $1.95 billion annually in administrative costs and tax credits, based on 1998–99 figures. 33 Pa. Bull. 25.

**8.** In *Richland Sch. Dist.*, appellants, who were furloughed teachers placed on a day-to-day substitute list, argued that being placed on the list did not mean that they had reasonable assurance of being called to teach. The Commonwealth Court denied benefits on the ground that they could be recalled to work at any time as substitutes usually were. In addition, the Commonwealth Court emphasized the school district's promise to reinstate appellants to full-time positions if it acquired the funds to rehire them.

legislative regulation. *See Pottstown*, 712 A.2d at 743; *see Elite Indus., Inc. v. Pa. Pub. Util. Com'n*, 574 Pa. 476, 832 A.2d 428 (2003) (*Elite*) (holding that where statute did not define the "necessary and proper" test for meeting the burden of proof to obtain certificate of public convenience, the agency's regulation explaining the standard was a binding legislative regulation); *see Uniontown*, 313 A.2d at 169–70 (holding that where statute did not define "*de facto* segregation," the agency could and did promulgate a legislative regulation that provided a valid and binding definition of the term). The next step is to decide whether the Regulation is valid. *See Uniontown*, 313 A.2d at 169.

## III. Validity of the Regulation

A legislative regulation is valid if A) it was adopted within the ambit of an agency's authority as granted by the legislature, B) it was issued pursuant to proper procedure, and C) it is reasonable. *Uniontown, supra.* Although both parties agree that the Regulation was adopted following the appropriate procedure for a legislative regulation, there is substantial disagreement as to the remaining prongs of the validity test. The Department claims that the Regulation meets all the requirements of a valid legislative regulation. The School District disputes the Department's assertion and argues that the Regulation was adopted outside the scope of the Department's authority, was also unreasonable given the purpose of Section 402.1(1), and is thus invalid.

### A. Scope of the Department's Power and Authority

 Under Section 201 of the Act, the Department shall have power and authority to adopt, amend, and rescind such rules and regulations ... as it deems necessary or suitable. Such rules and regulations shall not be inconsistent with the provisions of [the Act.]

43 P.S. § 761(a).[9] Under Pennsylvania law, this language indicates that the scope of the Department's authority is broad

9. Section 201(a) of the Act is published as 43 P.S. § 761(a).

and encompasses the delegated legislative power to define by regulation terms otherwise undefined by the statute. *See Uniontown*, 313 A.2d at 169–70. In *Uniontown*, this Court held that statutory language in the Pennsylvania Human Relations Act (PHRA) that is similar to that in Section 201(a), *supra*, allowed the Pennsylvania Human Relations Commission (PHRC) to promulgate a regulation that defined "*de facto* segregation" in such a way that it imposed strict desegregation standards and new accompanying duties on public schools. *See Uniontown*, 313 A.2d at 160, 171 (holding that school districts had to submit new desegregation plans to conform to the PHRC's regulation). *De facto* segregation was not defined by statute and the courts had not addressed the issue. *Id.* at 157–58. Several public schools challenged the PHRC's regulation on the ground that it was adopted without statutory authority. *See id.* at 161. The PHRA had given the PHRC authority "[t]o adopt, promulgate, amend and rescind rules and regulations to effectuate the policies and provisions of this act." *Id.* at 169 (quoting 43 P.S. § 957). This Court held that the grant of authority under the PHRA was broad and the PHRC's exercise of that authority was valid. *Id.* at 169–70 (concluding that the statute shows "a legislative intent to empower the [PHRC] to do a good deal more than merely interpret the [PHRA]").

Nevertheless, the School District argues that the second sentence of Section 201(a) of the Act limits the Department's power and authority to adopt legislative regulations. The second sentence states that the Department must adopt rules and regulations "not inconsistent with the provisions of [the Act]." 43 P.S. § 761(a). According to the School District, the limitation is a restriction on the Department's grant of authority unlike any found in statutes that allow the respective agencies to adopt legislative regulations.

The School District is incorrect. For example, the Public Utility statute contains a similar limitation to Section 201(a) of the Act and yet this Court has held that the Public Utility Commission (PUC) may adopt binding legislative regulations. *Compare* 66 Pa.C.S. § 501(b) *with* 43 P.S. § 761(a); *see,*

*generally, Elite,* 832 A.2d 428. In *Elite,* this Court held that the Commonwealth Court erred in interpreting the "necessary or proper" burden of proof for obtaining a certificate of public convenience contrary to a binding PUC regulation in existence at the time. *Elite,* 832 A.2d at 431–32. Opponents to the grant of a limousine service certificate had challenged the PUC's authority to adopt the PUC regulation. *Id.* at 429. The regulation had lowered the burden of proof on an applicant to obtain a Section 1103 certificate by interpreting "necessary or proper" differently than the courts had done prior to the promulgation of the regulation. *Id.* at 431. This Court upheld the PUC's determination that the certificate of public convenience was proper and, in the process, acknowledged that the regulation pursuant to which the certificate was awarded was a valid exercise of the PUC's delegated authority. *Id.* at 431–32.

The School District nonetheless argues that the PUC's power to adopt legislative regulations is derived from Section 1504 of its enabling statute, the Public Utility Code. 66 Pa.C.S. § 1504. According to the School District, Section 1504 does not contain any limiting language similar to that in Section 201(a) of the Unemployment Compensation Act so that the Department's rulemaking power should be interpreted to be less than PUC's authority.

The School District's attempt to distinguish *Elite* fails. The School District is only partially correct as to the source of PUC's rulemaking authority. The PUC derives rulemaking authority from Section 1504 of the Public Utility statute with regard only to the supply of "fixed service utilities," like electricity, gas, and water. 66 Pa.C.S. § 1504; *see Rohrbaugh v. Pa. Pub. Util. Comm'n,* 556 Pa. 199, 727 A.2d 1080, 1085 (1999) (applying PUC regulation to utility that discontinued electrical service); *see also Popowsky v. Pa. Pub. Util. Comm'n,* 589 Pa. 605, 910 A.2d 38 (2006) (applying PUC regulation that addressed water line extension).

In *Elite,* however, which applied a PUC regulation applicable to motor common carriers, the PUC derived its authority not from Section 1504 but from Section 501 of the Public

Utility statute. 34 Pa. Bull. 3912. According to Section 501(a), the PUC "shall have full power and authority, and it shall be its duty to enforce, execute and carry out, by its regulations ... the provisions of [the Public Utility Code], and the full intent thereof." 66 Pa.C.S. § 501(a). This grant of regulatory authority was "in addition to any powers expressly enumerated"—such as, for example, in Section 1504. *Id.* Chapter 11 of the Public Utility Code (motor common carriers) did not contain any specific enabling language comparable to that of Section 1504 of Chapter 15 of the same statute (fixed service utilities). *See* 66 Pa.C.S. § 1101–1104. For this reason, the *Elite* regulation had been promulgated under Section 501, the general grant of rulemaking authority. 34 Pa. Bull. 3912.

Section 501 also states:

(b) Administrative authority and regulations.—The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth. *The commission may make such regulations, not inconsistent with law, as may be necessary or proper in the exercise of its powers or for the performance of its duties.*

66 Pa.C.S. § 501(b) (emphasis added). Significantly, Section 501(b) of the Public Utility statute contains almost the same limiting language as Section 201(a) of the Unemployment Compensation Act. *Compare* 66 Pa.C.S. § 501(b) ("not inconsistent with law") *with* 43 P.S. § 761(a) ("shall not be inconsistent with the provisions of [the Act]"). This Court held the *Elite* regulation valid and binding, in spite of the fact that it created new rights and mandated a different standard of conduct from previous judicial interpretations of Section 1103. *Elite*, 832 A.2d at 431–32. Here, the Department promulgated a legislative regulation under a similar grant of power. The clear precedent is that the Department had the authority to adopt the Regulation subject to this appeal and Section 201(a) does not limit that power.

The School District's policy arguments do not persuade us to adopt a different conclusion as to the ambit of the

Department's authority here. First, we reject the School District's argument that the Section 201(a) limitation regarding regulations inconsistent with the statute should be given the broad interpretation that the Department may not adopt any legislative regulations. The School District's position leads to the absurd result that enabling statutes that do not contain the limiting language permit the adoption of regulations inconsistent with those statutes. Clearly the legislature would not authorize agencies to adopt binding regulations inconsistent with the applicable enabling statutes. *See* 1 Pa.C.S. § 1922(1) ("the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). Indeed, all regulations, whether legislative or interpretive "must be consistent with the statute under which they were promulgated." *Popowsky*, 910 A.2d 38 at 53. The Section 201(a) limitation merely codifies this requirement by stating that only Department regulations consistent with the provisions of the Act are valid. *See, e.g., Dep't of Labor and Indus. v. Unemployment Comp. Bd. of Review*, 203 Pa.Super. 183, 199 A.2d 474 (1964).[10]

Next, we reject the School District's argument that the complex nature and "detailed statutory scheme" of the Unemployment Compensation Act suggests that the Department's regulatory authority is limited. Indeed, the Act specifically grants the Department "power and authority to adopt, amend, and rescind such rules and regulations . . . as it deems necessary or suitable." 43 P.S. § 761(a). If the complex nature of a statute (the Act) were a criterion for denying a Commonwealth agency (the Department) the power to promulgate legislative regulations, then the intent of the legislature that the Department adopt regulations "as it deems necessary or suitable," as expressed by the plain language of the Act, would be thwarted. Indeed, the logical consequence of the School District's argument is that the Department would not be able

10. In *Dep't of Labor and Industry*, the Superior Court held a Department regulation invalid on the ground that it was inconsistent with the Act. 199 A.2d at 478. The Superior Court did not hold, as the School District suggests, that the Department was prohibited from promulgating legislative regulations.

to adopt any regulations because the legislature had spoken on every issue. The rules of statutory interpretation do not permit such a conclusion. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions"); *see* 1 Pa.C.S. § 1922(1), *supra, and see* 1 Pa.C.S. § 1922(2) ("the General Assembly intends the entire statute to be effective and certain").

Finally, we refuse to include an inquiry into the complexity of a statutory scheme as an element in determining the ambit of an agency's statutory power and authority to adopt regulations where the language of the statute is clear and unambiguous in its direction that the agency may adopt such regulations. 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). We hold that the Department had the authority to adopt the Regulation as a binding legislative regulation.

### B. Adoption Pursuant to Applicable Procedure

In promulgating the Regulation, the Department states that it followed the procedures of the Commonwealth Documents Law,[11] the Commonwealth Attorneys' Act,[12] and the Regulatory Review Act[13] as required when adopting a legislative regulation. *See Uniontown,* 313 A.2d at 169 (holding that legislative regulations must be adopted pursuant to proper procedure); *Pottstown,* 712 A.2d at 743 (same). The School District concedes this point.

### C. Reasonable Regulation

In deciding whether an agency action, such as promulgation of a legislative regulation, is reasonable, we are not at liberty to substitute [our] own discretion for that of administrative officers who have kept within the bounds of

11. Act of July 31, 1968, P.L. 769 (45 P.S. §§ 1201–1208).

12. Act of Oct. 15, 1980, P.L. 950 (71 P.S. §§ 732–101–732–506).

13. Act of June 25, 1982, P.L. 633, *as amended* (71 P.S. §§ 745.1–745.15).

their administrative powers. To show that these have been exceeded in the field of action involved, it is not enough that [the agency's regulation] shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be so entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise of judgment.

*Uniontown,* 313 A.2d at 169 (internal quotations omitted) (holding PHRA regulation reasonable and binding). Similarly, in *Popowsky,* this Court held that "appellate courts must accord deference to the agency and may only overturn an agency determination if the agency acted in bad faith or the regulations constituted a manifest or flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Popowsky,* 910 A.2d at 55 (holding PUC regulation reasonable and binding).

██ The School District insists that 1) the Regulation violates the Department's grant of authority under Section 201(a) because it is inconsistent with the plain language of Section 402.1(1) or, in the alternative, 2) the Regulation is an unreasonable exercise of the Department's discretion because it is at odds with the intent of Section 402.1(1) of the Act. According to the School District, the Department's requirement that an employer offer a position that is substantially economically equivalent before "reasonable assurance" of continued employment exists is inconsistent with statutory language that unemployment benefits will not be paid as long as the teacher "perform[s] services in any such capacity" during the second academic year. 43 P.S. § 802.1. The School District reads Section 402.1 to mean that as long as Ms. LiVorio received an offer to work in an instructional capacity to perform *any* services at *any* salary, benefits, or hours she would not be entitled to unemployment benefits for the summer recess.[14]

14. The School District's reading of Section 402.1(1) coincides with the Commonwealth Court's interpretation pre-dating the Regulation. In promulgating the Regulation, the Department was not bound by the

We reject both of the School District's arguments. First, the Regulation is not inconsistent with the language of Section 402.1(1). A plain reading of the entire section reveals that the phrase "[a]ny such capacity" refers only to the three categories of jobs listed in the first clause of Section 402.1(1) (instructional, research, or principal administrative). *See* 43 P.S. § 802.1(1). Further, although the legislature expressly qualified "capacity," it did not qualify "services" to indicate that offering *any* services at *any* wages, benefits, or hours would be sufficient to meet the School District's burden of proof when seeking to avoid paying unemployment benefits under Section 402.1(1). *See id.* In fact, Section 402.1(1) does not address at all terms and conditions of employment. *See id.* Without any such relevant language, the School District's argument that the Regulation is inconsistent with the language of Section 402.1(1) fails.

Second, the Regulation is reasonable because it is not so at odds with Section 402.1(1)'s "fundamental principles as to be the expression of a whim rather than an exercise of judgment." *See Uniontown,* 313 A.2d at 169. According to the School District, the Regulation is at odds with the legislative intent of Section 402.1(1) because the purpose of that section is "to *eliminate* the payment of benefits to school employees during summer months." School District's Brief at 18–19 (emphasis in the original) (quoting *Haynes v. Unemployment Comp. Bd. of Review,* 65 Pa.Cmwlth. 541, 442 A.2d 1232, 1233 (1982)). The School District's view, however, fails to acknowledge that Section 402.1(1), when read in its entirety and in the context of the Unemployment Compensation Act, offers a limited right to avoid paying unemployment benefits.

Commonwealth Court's interpretation. *Elite,* 832 A.2d at 431 (holding that "past interpretation of a statute, though approved by the judiciary, does not bind the [agency] to that particular interpretation"). The Commonwealth Court has applied the Regulation on several occasions after its adoption without striking it as invalid. *See, e.g., Carlynton Sch. Dist. v. Unemployment Comp. Bd. of Review,* 929 A.2d 680 (Pa. Commw.2007); *Glassmire v. Unemployment Comp. Bd. of Review,* 856 A.2d 269 (Pa.Commw.2004); *Archie v. Unemployment Comp. Bd. of Review,* 897 A.2d 1 (Pa.Commw.2006).

Considered in its entirety, Section 402.1(1) already appears to require economic equivalency to some extent before permitting an employer like the School District to avoid paying unemployment benefits during the summer recess. The section denies benefits to one who performs in one of three capacities during one academic year with reasonable assurance to perform in one of the same three capacities the following year. *See* 43 P.S. § 802.1. In other words, if a teacher is to return as a teacher, researcher, or principal administrator of a school she may not receive unemployment benefits. If, however, she returns in a non-instructional, non-research, or non-principal administrative position (*i.e.*, as a member of the custodial staff), she is entitled to benefits. As the Commonwealth Court stated:

> The intent of the legislature in passing Section 402.1 was to eliminate the payment of benefits to school employees during summer months and other regularly scheduled vacations, on the rationale that such employees are able to anticipate and prepare for these nonworking periods. The law thus recognizes that these employees are not truly unemployed or suffering from economic insecurity during scheduled recesses.

*Haynes,* 442 A.2d at 1233. While this statement is generally true with regard to school employees who perform the same services every academic year, its rationale breaks down with respect to school employees like Ms. LiVorio. The decrease in Ms. LiVorio's income was not caused simply by the summer vacation but by the School District's decision to offer her a position with fewer hours, salary, and benefits. *Cf. Zielinski v. Unemployment Comp. Bd. of Review,* 834 A.2d 1225 (Pa. Commw.2003).[15] The Regulation addresses the inequitable

---

**15.** In *Zielinski,* a full-time teacher for the 2001–02 school year was offered *per diem* substitute work for the 2002–03 academic year and sought unemployment benefits for the fall semester 2002. 834 A.2d at 1227–28. The referee denied benefits based on Section 402.1(1) although the claimant had not sought benefits for the summer recess, and the UCBR affirmed. *Id.* The Commonwealth Court reversed the decision of the UCBR and held that the claimant was entitled to benefits under Section 4(u) of the Act, which defined "unemployed." *Id.* at 1229. Here, Ms. LiVorio is in a similar financial position as the

gap created for school employees like Ms. LiVorio when her position disappears during the second academic year and her only option is to be unemployed or accept a position with less or possibly no compensation.

The Department's Regulation also remedies the inequity pursuant to the stated purposes of the Unemployment Compensation Act. The first stated goal is humanitarian: to provide "[s]ecurity against unemployment and the spread of indigency." 43 P.S. § 752 (Declaration of public policy). The Regulation extends unemployment benefits to persons who have suffered a loss of income. The Act's second stated and equally important goal is to cooperate fully with USDOL so as "to secure to this Commonwealth and its citizens all advantages available under the provisions of the Social Security Act that relate to unemployment compensation." 43 P.S. § 767(a)(1). As the Department's Bulletin publication recounts, USDOL notified the Commonwealth of its failure to conform to federal law in its interpretation of "reasonable assurances." 33 Pa. Bull. 25 (January 4, 2003). The Department's Regulation adjusted Pennsylvania unemployment law to conform to USDOL's requirement and, as a result, met its statutory mandate. Placed into context, the Regulation is clearly consonant with Section 402.1(1) and the rest of the Act so it is therefore reasonable.

 For these reasons, we hold that the Department's Regulation, 34 Pa.Code § 65.151 was a valid exercise of the Department's power to promulgate legislative regulations.

## IV. Effect of Legislative Regulation

 A valid legislative regulation "is the product of an exercise of legislative power by an administrative agency . . . and is as binding upon a court as a statute." *Uniontown*, 313 A.2d at 169 (internal citations omitted). Indeed, the parties

claimant in *Zielinski:* she was offered a *per diem* substitute position with lower wages, fewer benefits, and no guarantee of sustained or any employment. *See* N.T. 08/08/2007, at 6–8, 10. Yet, the Commonwealth Court denied Ms. LiVorio benefits. The two results appear inconsistent in view of the stated purposes of the Act, *i.e.* to provide "[s]ecurity against unemployment and the spread of indigency." 43 P.S. § 752.

do not dispute that, if valid, the Regulation entitles Ms. LiVorio to unemployment benefits. As a result, we reverse the decision of the Commonwealth Court and reinstate the decision of the UCBR, which relied on the Regulation to award Ms. LiVorio unemployment benefits. Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER, and McCAFFERY join the opinion.

Justice TODD concurs in the result.