# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carla M. Boyd,                                  :
                     Petitioner         :
                                          :
         v.                                      :    No. 205 C.D. 2018
                                          :    Argued: October 15, 2018
Unemployment Compensation          :
Board of Review,                               :
                     Respondent       :

**BEFORE:  HONORABLE P. KEVIN BROBSON, Judge**
                      **HONORABLE MICHAEL H. WOJCIK, Judge**
                      **HONORABLE CHRISTINE FIZZANO CANNON, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED:  November 20, 2018**

Petitioner Carla M. Boyd (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board reversed the Unemployment Compensation Referee's decision, which awarded Claimant unemployment compensation benefits. For the reasons set forth below, we now affirm the Board's decision.

Claimant has been employed by the Community College of Allegheny County (Employer)[1] as an Adjunct Professor since 1999. (Certified Record (C.R.),

---

[1] Employer intervened in this matter by filing a notice of intervention on March 16, 2018. The Board subsequently notified this Court that it would not be filing a brief or participating in oral argument of this matter.

Item No. 11 at 4.) Claimant filed for benefits on January 1, 2017, claiming benefits for the weeks ending on January 1, 2017, and May 20, 2017. (C.R., Item Nos. 1, 12.) The Indiana Unemployment Compensation Service Center (Service Center) found Claimant ineligible for both periods under Section 402.1 of the Unemployment Compensation Law (Law),[2] because Claimant had reasonable assurances of employment during the next term. (C.R., Item No. 7.) Claimant then appealed from the Service Center's decision as it related to the week ending on May 20, 2017, and a Referee conducted an evidentiary hearing on August 23, 2017. (C.R., Item Nos. 8, 11.)

At the evidentiary hearing, Claimant testified that, as of the date of the hearing, she had last worked for Employer during the 2017 spring term, during which she taught four computer information technology courses. (Reproduced Record (R.R.) at 16a.) Those courses started on various dates in January, February, and March 2017. (*Id.*) Claimant received $800 per credit hour for those courses, for a total of $8,200 for the spring term. (*Id.* at 17a.) Claimant testified she has taught courses during the summer term. (*Id.*) Claimant could not recall the number of summer terms during which she taught, but she testified that it was more than one. (*Id.*) She stated that tenured faculty usually teach during the fall and spring terms, and the opportunity for adjunct instructors prevails in the summer. (*Id.* at 22a.)

Claimant testified that on March 1, 2017, Employer offered her the opportunity to teach three courses during the summer of 2017, and she accepted the offer. (*Id.* at 17a.) Ultimately, she did not teach those classes because Employer

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1.

2

cancelled the courses due to low enrollment. (*Id*.) She testified that Employer has cancelled courses other times due to low enrollment. (*Id.* at 18a.)

According to Claimant, Employer does not distinguish between the summer term and the fall and spring terms. (*Id*.) Claimant explained that there is no difference in terms of work when comparing the fall and spring terms to the summer term—*i.e.*, the amount of time spent preparing for a course is the same. (*Id.*) There is no difference in content or pay, and there is no noticeable decrease in enrollment. (*Id.*) Fall courses are ten, fourteen, and sixteen weeks in length, and summer courses are six, eight, and ten weeks in length. (*Id.* at 21a-22a.)

Claimant testified that she attempted to find alternative work for the summer of 2017 at a different college and searched Employer's website for other jobs. (*Id.* at 19a.) She testified that she relies on full-year employment as opposed to simply two academic terms. (*Id.*) She further testified that Employer offered her the opportunity to teach one, three-credit course in the fall of 2017, for a total of $2,400. (*Id.*) Employer pays her on a monthly basis for each term during the term which she is teaching. (*Id.* at 21a.) Claimant received a letter (Letter of Reasonable Assurance) from Employer, dated April 6, 2017, providing her "notice of reasonable assurance of continued part-time employment for the fall semester." (*Id.* at 31a.) It also noted that "[t]he final fall schedule is subject to enrollment and final course offerings." (*Id.*) Claimant testified that she has received the same or a similar letter in past terms. (*Id.* at 24a.)

Employer presented the testimony of Yvonne Powers, Employer's Director of Employee and Labor Relations. (*Id.* at 14a.) Ms. Powers testified regarding the Letter of Reasonable Assurance, explaining that it is a standard letter sent to all of Employer's faculty members every year. (*Id.* at 24a.) She also testified

3

that the Letter of Reasonable Assurance serves as a guarantee that faculty members will receive work from Employer in the future. (*Id.* at 25a.) Ms. Powers testified that there is a difference between the regular school schedule and the summer terms[3] in that graduation follows the end of the spring term. (*Id.*) Following graduation, there is a two- or three-week time period before the summer terms begin, which Employer refers to as summer recess. (*Id.* at 24a, 25a.) The summer terms have a lot of shortened classes. (*Id.* at 24a.) During the spring and fall semesters, Employer offers students the courses that the students will need to be on track for graduation. (*Id.*) During the summer terms, Employer offers some of the courses required for graduation but also offers extra classes during this time period. (*Id.*)

Claimant's counsel asked Ms. Powers a series of questions regarding the course catalog, duration and content of courses, and tuition paid by students during the various terms, but Ms. Powers did not know the answer to those questions. She noted that as Director of Employment and Labor Relations, she does not deal with those matters. (*Id.* at 27a-29a.) During that questioning, the Referee accepted Claimant's counsel's representation that even though the length of the summer terms is shorter than the length of the spring and fall terms, the number of hours that a student would be in a class offered in the summer term is equivalent to the number of hours a student would be in that same course if it was offered in the fall and spring terms. (*Id.* at 28a.) The difference is that a course offered during the fall and spring

---

[3] Throughout her testimony, Ms. Powers referred to the periods of instruction following summer recess and preceding the fall term as summer sessions, but then she later agreed to the terminology summer term or summer terms. (R.R. at 26a.) She explained that there is a first and second summer term. (*Id.*) For purposes of consistency, we will use the phrase summer term(s) in place of summer session(s) when summarizing Ms. Powers' testimony.

terms may meet for only fifty minutes at a time, whereas a summer course may meet for over two hours at a time.[4] (*Id.*)

Ms. Powers further testified that course offerings are based on enrollment, and Employer may cancel courses based on enrollment. (*Id.* at 29a.) In those instances, Employer usually opts to find other courses for an instructor because Employer has given a reasonable assurance of employment. (*Id.*)

After the conclusion of the evidentiary hearing, the Referee issued a decision reversing the Service Center's determination, finding Claimant eligible for unemployment compensation benefits due to lack of reasonable assurance of continued employment. (C.R., Item No. 12.)

Employer then appealed to the Board, which reversed the Referee's decision and adopted its own findings of fact. (R.R. at 54a.) The Board concluded that Claimant was ineligible for benefits pursuant to Section 402.1 of the Law. (*Id.*) In so doing, the Board issued the following findings of fact:

1. Since March of 1999, the claimant has been employed as an adjunct professor with Community College of Allegheny [County].

2. The employer has regular spring and fall academic terms.

---

[4] Claimant's counsel also questioned Ms. Powers as to whether she knew how often Claimant taught during the summer terms in the past. (R.R. at 29a.) Employer's representative raised an objection based on relevance. When pressed for an explanation regarding the reason for the question, Claimant's counsel answered that he was "just curious whether or not [Ms. Powers] is familiar with what adjuncts typically do." (*Id.*) The record reveals only a portion of the Referee's response, as cross-talk prevented the court reporter from obtaining a transcription of the response. (*Id.*) The Referee's partial response is as follows: "[Claimant] says she's worked [s]ummer and she shows you that . . . ." (*Id.*) Following what the court reporter transcribes as "cross-talk," Claimant's counsel responds "[o]kay, all right, . . . fair enough," and continues with a different line of questions. (*Id.*)

5

3. The claimant, on occasion, worked over the summer.

4. The employer offers summer courses, which are shortened in length, which some are only six[-]week courses that are expedited.

5. The spring and [fall][5]academic terms are different from the summer session.

6. In her internet claim form, the claimant admitted she was unemployed due to being on a summer break.

7. The summer program course that the claimant was selected to teach was cancelled due to low enrollment.

8. The claimant received reasonable assurance to teach in the Fall of 2017.

(*Id.*) The Board reasoned:

> In *Community College of Allegheny County v. Unemployment Compensation Board of Review*, 634 A.2d 845 (Pa. Cmwlth. 1993)[, *appeal denied*, 653 A.2d 1234 (Pa. 1994), . . . t]he Court held that: Although [the employer] regularly offers classes during the summer, that fact does not mean that the summer period is a regular academic term. In view of the significant decrease in enrollment during the summer, the definition of the academic calendar as consisting of a fall and spring term, and the varying lengths of course instruction in the summer, we conclude that the period in question—May 25, 1991 to June 22, 1991—is not a regular term, nor is it part of a regular term. *Community College*, 634 A.2d at 848. Here, following the Court's rationale, the Board similarly concludes, based on the facts as found by the Board, that the period in question is not part of the regular term. As such, the claimant is ineligible for benefits during the summer session.

(*Id.*) Claimant now petitions this Court for review.

---

[5] It appears that the Board inadvertently omitted the word "fall" from finding of fact number 5.

6

On appeal,[6] Claimant argues that substantial evidence does not exist to support findings of fact numbers 6 and 8. Claimant's error of law claims are as follows: (1) the Board committed an error of law by failing to conclude that Employer's summer term is a regular term within the meaning of Section 402.1 of the Law; (2) the Board committed an error of law by denying benefits because the period at issue is a regular term and courts have denied benefits only when claimants seek compensation for a period defined as a summer break—not where the period is a regular term; and (3) the Board committed an error of law by concluding that Claimant received reasonable assurance, in spite of the fact that the actual compensation for teaching in the fall was substantially less than the compensation earned in the spring. Alternatively, Claimant asserts that she is eligible for benefits because she was unemployed within the meaning of Section 4(u) of the Law.[7]

We will first address Claimant's substantial evidence arguments. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in

---

[6] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[7] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 753(4)(u). Section 4(u) of the Law, in pertinent part, defines "unemployed," as:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Claimant argues that substantial evidence does not exist to support finding of fact number 6: "In her internet claim form, the claimant admitted she was unemployed due to being on a summer break." (R.R. at 54a.) The Referee admitted Claimant's internet claim form into the record during the hearing. (*Id.* at 15a.) Claimant indicated on the form that she was unemployed due to "summer recess." (C.R., Item No. 2 at 4.) We see no distinction between the term "break" and "recess" for this finding. Thus, substantial evidence exists via Claimant's internet claim form to support the Board's finding that Claimant characterized her unemployment as being due to a summer break or recess. Claimant, in her brief, seems to challenge this finding because she believed that it characterized the summer "term" as a

8

"break." To the contrary, the Board simply re-stated Claimant's response on the internet claim form. The finding did not label the summer term as a type of break or recess. Rather, it merely reflects Claimant's characterization of her unemployment as being due to a summer break or recess.

Claimant's next argument also fails. Substantial evidence exists to support the Board's finding that Claimant received reasonable assurance to teach in the fall term of 2017. Claimant received a letter from Employer in April of 2017 that provided "notice of reasonable assurance of continued part-time employment for the fall semester." (R.R. at 31a.) Claimant testified that in past years she received the same or substantially similar letter. (*Id.* at 24a.) Further, Employer's witness testified that the letter provided reasonable assurance of employment in the 2017 fall term and was a standard letter Employer sent every year. (*Id.* at 25a.) The record, therefore, supports a finding that Claimant received reasonable assurance of continued employment in the fall term. Claimant challenges no other findings in her brief, and therefore, the Board's other findings are binding on appeal. *Munski v. Unemployment Comp. Bd. of Review*, 29 A.3d 133, 136 (Pa. Cmwlth. 2011).

We will now address Claimant's error of law claims. Whether an instructional, research, or principal administrative employee of an educational institution is eligible for unemployment compensation benefits is governed by Section 402.1 of the Law. *Glassmire v. Unemployment Comp. Bd. of Review*, 856 A.2d 269, 273 (Pa. Cmwlth. 2004). Section 402.1 of the Law provides that such employees are not eligible in the following instance:

> With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits *shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years,*

9

> *or during a similar period between two regular terms* whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms *and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms*.

(Emphasis added.) Stated another way, teachers who are not employed during a recess between two terms, who have been provided with a reasonable assurance of continued employment with the school for the term following the break, are ineligible for benefits. *See Archie v. Unemployment Comp. Bd. of Review*, 897 A.2d 1 (Pa. Cmwlth. 2006); *Katz v. Unemployment Comp. Bd. of Review*, 540 A.2d 624 (Pa. Cmwlth. 1988); *DeLuca v. Unemployment Comp. Bd. of Review*, 459 A.2d 62 (Pa. Cmwlth. 1983). Section 402.1 of the Law recognizes that breaks are scheduled in the academic term, and, accordingly, "employees are not truly unemployed or suffering from economic insecurity during scheduled recesses." *Haynes v. Unemployment Comp. Bd. of Review*, 442 A.2d 1232, 1233 (Pa. Cmwlth. 1982). Where reasonable assurance is concerned, the Board must determine whether reasonable assurance was given to the claimant "based on an examination of all the relevant facts." *Glassmire*, 856 A.2d at 273. The employer need not give an absolute guarantee of employment for the second academic term. *Archie*, 897 A.2d at 4. Rather, an employer provides reasonable assurance that the employee will perform services in the second academic term when:

> (1) The educational institution or educational service agency provides a bona fide offer of employment for the second academic period to the individual; [and]
>
> (2) The economic terms and conditions of the employment offered to the individual for the second academic period

10

are not substantially less than the terms and conditions of the individual's employment in the first academic period.

34 Pa. Code § 65.161(a).

First, Claimant asserts that the Board erred by concluding that the summer term is not a regular term within the meaning of the Law. We disagree. The factual scenario at hand is similar to the one in *Community College of Allegheny County*, wherein this Court found that a part-time professor was not eligible for benefits during the summer term because the school's summer term was not a regular term. *Cmty. Coll. of Allegheny Cty.*, 643 A.2d at 847. The Court did not deem summer term to be a regular term because the courses offered in the summer had lower enrollment, were shorter in duration, and were limited in number. *Id.* Here, the Board found that the summer courses offered at Employer's campus were shorter in duration. (R.R. at 54a; Finding of Fact (F.F.) No. 4.) The Board also found that the spring and fall terms are different from the summer session. (*Id.*; F.F. No. 5.) Further, it found that the summer program course Claimant was selected to teach was cancelled due to low enrollment. (*Id.* at 7.) Here, just as in *Community College of Allegheny County*, the Board found that: (1) the offered summer courses are shorter in duration; (2) there is some evidence that at least one class has been cancelled due to low enrollment; and (3) at least one class was unavailable over the summer term. It follows, then, that the summer term is sufficiently distinguishable from the spring or fall academic terms and does not constitute a regular term within the meaning of Section 402.1 of the Law.[8]

Claimant's next argument relies on a finding that Employer's summer term is a regular term. More specifically, Claimant argues that Section 402.1 of the

---

[8] The Court envisions that there could be a factual scenario where a summer term could be considered a regular term, but Claimant did not establish those circumstances in this case.

11

Law has only been applied to deny benefits to claimants who seek compensation during a summer break and not during a summer term. Thus, Claimant argues that, should we agree that the period at issue here is not a summer break, Claimant should be awarded benefits. As we discussed above, however, we conclude that the summer term is not a regular term, thereby disposing of this argument as well.

Claimant further asserts that the Board erred in concluding that she received reasonable assurance of continued employment because the economic terms and conditions of the Letter of Reasonable Assurance were substantially less than what was offered previously. The basis of her argument is that she was actually scheduled to teach one class in the fall, whereas in the spring she taught three classes, leaving her with less actual compensation than she previously received. The crux of this Court's inquiry, however, is "whether the terms and conditions offered were substantially less *at the time the offer was made*, 'without the benefit of hindsight.'" *Archie*, 897 A.2d at 5 (emphasis in original). In *Archie*, the claimant was an adjunct professor for an educational institution, where she taught two courses each fall and spring term. *Id*. at 2. The employer notified the claimant that she was to return for the fall term to teach the same two courses, subject to sufficient enrollment. *Id*. Based on the conditional language in the letter, the claimant applied for benefits at the end of the spring term but was denied. *Id.* On appeal, this Court held that the letter that offered continued employment with the university constituted reasonable assurance. *Id*. at 5. Due to the fact that the letter did not contain economic terms of employment, this Court inferred that the economic terms of employment as offered were unchanged. *Id*. at 4. This Court also found the fact that the claimant actually received fewer courses for the fall term than she received for the spring term to be irrelevant to the question of whether the claimant was *offered* reasonable assurance.

12

*Id.* This situation is different from one in which the claimant is not offered the same employment arrangement as the previous term. *See, e.g.*, *Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Review*, 983 A.2d 1231 (Pa. 2009).

In *Slippery Rock Area School District*, the claimant worked as a long-term substitute teacher, where she earned over $23,000 per year, and was allowed ten sick days per year. *Id.* at 1234. Before the fall term began, the school district informed the claimant that she would no longer be a long-term substitute but would be placed on a list of day-to-day substitutes. *Id.* at 1235. The new position did not guarantee daily employment or any employment whatsoever. *Id.* The claimant's rate of compensation was also reduced from $126.34 per day to $80 per day worked. *Id.* Further, the claimant had no paid sick days under the new position. *Id.* The Supreme Court, therefore, concluded that the claimant did not receive reasonable assurance of continued employment in the next term and was eligible for benefits. *Id.* at 1244. In coming to its holding, the Supreme Court recognized the maxim from this Court, which considers scheduled recesses to be periods in which employees are not truly unemployed. *Id.* The situation in *Slippery Rock*, however, caused the rationale behind this maxim to break down because the decrease in income was caused by the claimant's employer's decision to offer her a new position with fewer hours, compensation, and benefits. *Id.* The claimant's position under that set of facts effectively disappeared. *Id.*

Here, Employer offered Claimant reasonable assurance of part-time employment in the fall, subject to enrollment levels in the courses. Claimant testified that she received a similar Letter of Reasonable Assurance in prior terms. Employer's witness also testified that the Letter of Reasonable Assurance was a form or standard letter sent each term. Just as in *Archie*, the letter did not offer wages, did

13

not specify which classes were to be taught, and did not even guarantee that a certain number of classes would be taught by Claimant. Pursuant to *Archie*, the terms offered are, therefore, inferred to be the same as the economic terms from previous terms. Further, this situation is not reminiscent of the facts in *Slippery Rock*. In the case now before this Court, Employer offered Claimant a position as an adjunct professor. There was, therefore, no change in her job description or duties. The terms offered are the same as those offered previously, and Employer offered Claimant the same job she has held since 1999. The Board, therefore, did not commit an error of law by concluding that Claimant received reasonable assurance of continued employment in the fall.

Finally, relying on this Court's decision in *Zielinski v. Unemployment Compensation Board of Review*, 834 A.2d 1225 (Pa. Cmwlth. 2003), Claimant argues that even if she is not entitled to benefits under the above analysis, she is entitled to benefits because she was unemployed within the meaning of Section 4(u) of the Law when she received only one course to teach for the fall term. Under Pennsylvania Rule of Appellate Procedure 1551, "[n]o question shall be heard by the court which was not raised before the government unit." This is the first time that Claimant has raised this argument, and, therefore, it is waived. The record is devoid of any mention of a claim for benefits based on unemployment during the fall term. In fact, counsel for Claimant clarified in the beginning of the hearing before the Referee that the only claim being made was for benefits for the week ending on May 20, 2017. (C.R., Item No. 11 at 3.) Claimant, therefore, has waived this issue, and this Court cannot determine the merits of the argument.

For these reasons, the Board did not err in concluding that Claimant is ineligible for benefits for the period between two regular terms, where she has

received reasonable assurance of continued employment. Accordingly, we affirm the Board's order denying Claimant benefits pursuant to Section 402.1 of the Law.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carla M. Boyd,                              :
                    Petitioner             :
                                           :
        v.                                 :        No. 205 C.D. 2018
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :

# **O R D E R**

AND NOW, this 20th day of November, 2018, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.


---
P. KEVIN BROBSON, Judge